PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                    No. 06-5173

RANDY KELLY,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, District Judge.
(2:06-cr-00119-ALL)

Argued: September 28, 2007

Decided: December 12, 2007

Before NIEMEYER and DUNCAN, Circuit Judges, and
T. S. ELLIS, III, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed by published opinion. Senior Judge Ellis wrote the opinion,
in which Judge Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED:** Jonathan David Byrne, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.
Karen L. Bleattler, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Charleston, West Virginia, for
Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public

Defender, David R. Bungard, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

## OPINION

ELLIS, Senior District Judge:

A jury convicted Randy Kelly of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). Kelly appeals his conviction and sentence, challenging certain evidentiary rulings, the sufficiency of the evidence to support his conviction, the denial of his motion to dismiss, and the sentence imposed by the district court. We affirm.

### I.[1]

Kelly, a long-haul trucker, owned and operated a Peterbilt truck and refrigerated trailer, which he used to haul goods from his home in North Carolina to various points in the Midwest. On his trips, Kelly often stopped at the Go-Mart truck stop near Charleston, West Virginia for rest and refueling. While at the Go-Mart in September 2005, Kelly met Cathy Carder, a prostitute, and became Carder's regular client, visiting her about every other week. In time, Kelly asked Carder to provide him with both pornography and child pornography. He also asked Carder how old she had been when she first had sex and requested that she alter her appearance so she would appear more child-like when she was with him.

Eventually, Kelly told Carder that he wanted to have sex with a 12-year-old virgin and asked Carder if she could find one for him. When Carder realized Kelly was serious about his request, she contacted Eric Johnson, a Charleston police officer, and told him that one of her

---

[1]Because the jury verdict was adverse to Kelly, we recite the facts in the light most favorable to the government. *See United States v. Murphy*, 35 F.3d 143, 144 (4th Cir. 1994).

clients had expressed a desire to have sex with a child. Because Carder only knew Kelly by his nickname, "Grandpa," she described Kelly and his truck to Officer Johnson. Thereafter, every time Carder saw Kelly he asked whether she had found his "birthday present," namely a 12-year-old virgin with whom he could have sex. Kelly told Carder that he would find a child himself if she did not do so for him.

On April 23, 2006, Kelly arrived unexpectedly at the Go-Mart and asked Carder for his "birthday present." Carder told Kelly she "may have found somebody" and then, out of Kelly's presence, attempted unsuccessfully to contact Officer Johnson. She spoke instead with another officer, who instructed Carder to tell Kelly to come back three days later, on April 26, 2006. Following this instruction, Carder told Kelly she would have the child ready for him on April 26 and that the price tag for sex with the child was $200. Kelly agreed to return on April 26, and asked Carder to provide him with two Viagra pills when he arrived.

Kelly returned as promised on April 26, 2006 and immediately asked Carder for his "birthday present." When Carder said she would go and retrieve the child, Kelly gave her money to buy drugs and alcohol to relax the child. Carder then contacted Officer Johnson, who gave her a recording device and two Viagra pills. Carder then returned to Kelly's truck and recorded a conversation with Kelly in which he detailed his plans for having sex with the child. In the course of this conversation, she gave Kelly the Viagra pills and told him she would bring him the child. Police then arrested Kelly and found $310 cash in his truck. When questioned at the police station, Kelly admitted that he had agreed to return to the Go-Mart that day so that he could have sex with a 12 year-old.

On May 23, 2006, the grand jury indicted Kelly on the charge of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a person under 18 years of age, in violation of 18 U.S.C. § 2423(b). After a two-day trial, the jury convicted Kelly and he was thereafter sentenced to 63 months incarceration, to be followed by 10 years of supervised release subject to various conditions, including the special condition that he register as a sex offender under all applicable laws.

## II.

## A.

Kelly first challenges the district court's admission of his 1984 conviction for the attempted rape of a 12 year-old, claiming that the conviction's prejudicial effect far outweighed its probative value and should have been excluded under Rule 403, Fed. R. Evid. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Young*, 248 F.3d 260, 266 (4th Cir. 2001).

Analysis properly begins with Rule 414, Fed. R. Evid., which permits the introduction of past child molestation offenses in child molestation prosecutions. This rule is an exception to the general rule that evidence of past crimes may not be used "to prove the character of a person in order to show action in conformity therewith." *See* Rule 404(b), Fed. R. Evid. Unlike Rule 404(b), Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses. In allowing this evidence, Rule 414 reflects Congress's view[2] that this propensity evidence "is typically relevant and probative." 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole); *see also United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997) (noting the "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible").

Yet, the analysis does not end here, for as is true of all admissible evidence, evidence admitted under Rule 414 is subject to Rule 403's balancing test. *See United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998). Thus, even if a prior conviction qualifies for admission under Rule 414, evidence of that conviction may nonetheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" to the defendant. Rule 403, Fed. R. Evid. In applying the Rule 403 balancing test to prior offenses admissible under Rule 414, a district court should consider a number of factors, including (i) the similarity between the previous offense and the

---

[2]Rule 414 was adopted by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796.

charged crime, (ii) the temporal proximity between the two crimes, (iii) the frequency of the prior acts, (iv) the presence or absence of any intervening acts, and (v) the reliability of the evidence of the past offense. *See United States v. Hawpetoss*, 478 F.3d 820, 825-26 (7th Cir. 2007) (citing *United States v. LeMay*, 260 F.3d 1018, 1027-29 (9th Cir. 2001)).[3] Importantly, we defer to the district court's Rule 403 balancing using these or other factors "unless it is an arbitrary or irrational exercise of discretion." *United States v. Heater*, 63 F.3d 311, 321 (4th Cir. 1995) (quoting *Garraghty v. Jordan*, 830 F.2d 1295, 1298 (4th Cir. 1987).

Given these principles, we have no difficulty concluding that the district court did not abuse its discretion in admitting Kelly's prior conviction for the attempted rape of a child. The similarity between the two offenses was striking. Kelly's past conviction was for attempting to rape a 12 year-old, and he was charged here with traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a 12 year-old. And while Kelly's prior conviction was 22 years prior to the crimes charged, this fact alone, given the factual similarities in the offenses, does not render the conviction inadmissible.[4]

---

[3]There is a circuit split on whether a district court must address these or other specific factors and make findings. The Ninth Circuit requires this, whereas the Seventh Circuit adopts a more flexible approach and does not dictate a specific analysis. *Compare LeMay*, 260 F.3d at 1027-28, *with Hawpetoss*, 478 F.3d at 825-26. Although disposition of this case does not require choosing between these views, the Seventh Circuit's more flexible approach seems preferable in view of this circuit's general view that a district court has "wide discretion" in admitting or excluding evidence under Rule 403. *See United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th Cir. 1984). This deferential standard reflects the fact that "a district court is much closer than a court of appeals to the 'pulse of a trial.'" *See United States v. Russell*, 971 F.2d 1098, 1104 (4th Cir. 1992).

[4]*See, e.g.*, *United States v. Drewry*, 365 F.3d 957, 960 (10th Cir. 2004) (finding "[s]ufficient factual similarity" between 25-year-old uncharged child molestation and the charged offense merited admission of evidence "that might otherwise be inadmissible due to staleness"); *United States v. Gabe*, 237 F.3d 954, 959-60 (8th Cir. 2001) (upholding district court's admission of evidence of sexual molestation committed 20 years before

Nor was the admission of Kelly's prior conviction unfairly prejudicial. While the prior conviction was undoubtedly prejudicial to Kelly's defense, it was not *unfairly* prejudicial. Rather, it was prejudicial "for the same reason it is probative—it tends to prove [the defendant's] propensity to molest young children." *See Gabe*, 237 F.3d at 960. Also worth noting is that the government appropriately did not seek to elicit inflammatory testimony about Kelly's prior conviction, but instead presented only the official conviction record. This presentation method served to minimize the risk of unfair prejudice to Kelly. In sum, then, the district court did not abuse its discretion in admitting Kelly's prior conviction for attempting to rape a 12 year-old.

B.

Kelly next challenges the district court's exclusion of Carder's prior conviction for making or issuing a worthless check, which was offered for impeachment purposes. Under Rule 609, Fed. R. Evid.:

> E]vidence that [the] witness has been convicted of a crime *shall be admitted . . .* if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Rule 609(a)(2) (emphasis added). A trial judge has no discretion to exclude evidence that qualifies under this rule. *See United States v. Cunningham*, 638 F.2d 696, 698 (4th Cir. 1981). Because the admission of such evidence is mandatory, however, Rule 609(a)(2) covers only "a narrow class of crimes which by their nature bear directly upon the witness' propensity to testify truthfully." *Id.*

---

charged offenses where prior acts were "almost identical" to charged crimes); *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) (stating that "[s]imilarity of prior acts to the charged offense may outweigh concerns of remoteness in time"); *see also LeMay*, 260 F.3d at 1027-30 (upholding admission of defendant's child abuse 12 years prior to charged crimes); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (noting that "Congress meant [Rule 414's] temporal scope to be broad" in upholding admission of evidence of abuse 16-20 years before charged offense).

In *Cunningham*, we upheld the district court's exclusion of a worthless check conviction, noting that "[t]he shotgun term 'worthless checks' could conceivably involve forgery, false pretenses or some other circumstance which would fall within the rubric of 'dishonesty or false statement,'" but that "the phrase could connote something as innocuous as a check returned for 'insufficient funds.'" *Id.* at 699. Because no evidence was presented to the district court on "the particulars of the charges," we found no error in the district court's refusal to admit the prior conviction. *Id.* Yet, we noted that "we can conceive of circumstances under which a conviction for 'worthless checks' might qualify for admission under Rule 609(a)(2)." *Id.*

Here, Kelly points to the language of the Florida statute under which Carder was convicted, which makes it an offense to "draw, make, utter, issue or deliver to another any check . . . for the payment of money or its equivalent, *knowing* . . . that the maker or drawer thereof has not sufficient funds." Fla. Stat. Ann. § 832.05(2)(a) (emphasis added). Kelly argues that this required statutory mental state makes clear that Carder's conviction must have involved dishonesty or a false statement.[5] Hence, he argues, this was not a case, like *Cunningham*, where the circumstances of the worthless check conviction were entirely unknown.

While this argument may have been sufficient to require admission of Carder's conviction under Rule 609(a)(2), Kelly did not present it to the district court. At trial, the government pointed to Carder's criminal history report, which indicated that her conviction was based on "insufficient funds." J.A. 309. Citing *Cunningham*, the district court asked whether Kelly had any evidence that Carder's conviction was for something more than insufficient funds. Kelly proffered no such evidence, but instead simply cited the Florida statute without disclos-

---

[5]*See Children's Palace, Inc. v. Johnson*, 609 So.2d 755, 757 (Fla. Dist. Ct. App. 1992) (noting that "[i]t is apparent from the plain language of the worthless check statute that the crime has deceit at its basis"). Yet, it is worth noting that the statute's breadth may extend to conduct not characterized by deceit. Thus, the statute appears to cover a person who issues a check knowing that she does not currently have adequate funds in her account, but intending in good faith to make a timely covering deposit.

ing the statute's text or making the textual argument he now makes. Because Kelly raised this argument for the first time on appeal, he has waived it. *See United States v. Evans*, 404 F.3d 227, 236 n. 5 (4th Cir. 2005) (stating that a defendant who "failed to raise [an] argument before the district court . . . has therefore waived it on appeal").

Even assuming, *arguendo*, that the exclusion of Carder's conviction was error, the error was harmless, as the defense thoroughly attacked Carder's credibility on a variety of other grounds.[6] First, Carder admitted on cross-examination that she was a prostitute and regular crack-cocaine abuser. Second, the defense brought out numerous inconsistencies, both in Carder's testimony and in her dealings with police. For example, Carder stated on cross-examination that she never told Officer Johnson that Kelly's truck was red and black, that Kelly drove a route from Pennsylvania to Louisiana, or that Kelly was willing to pay $3,000 to $5,000 to have sex with a minor. Yet, defense counsel's cross-examination of Officer Johnson contradicted Carder's testimony in this regard, as he testified that Carder had told him precisely this when she first described Kelly to him. Moreover, a defense witness testified that Kelly had never driven a red and black truck and had never driven a route from Pennsylvania to Louisiana.

Nor does this complete the catalog of the defense efforts to impeach Carder. In her testimony, she denied having asked Officer Johnson to tell another police officer to stop "running her off the lot" at the Go-Mart in exchange for her cooperation. Yet, Officer Johnson's testimony indicated that Carder's testimony on this point was false; he testified that she had made such a request. And finally, the defense argued that Carder's testimony was suspect because she received a benefit from the police for her testimony. Specifically, on April 12, 2006, Carder appeared in state court on two tickets for soliciting prostitution. The police agreed that day to postpone Carder's hearing in exchange for her cooperation with police concerning Kelly and other matters. The defense then showed that after Kelly was arrested, Carder's tickets were dropped.

---

[6]*See, e.g.*, *United States v. Capers*, 61 F.3d 1100, 1104 (4th Cir. 1995) (finding exclusion of impeachment evidence harmless where defendants "had the opportunity to cross-examine" and "to impeach [the witnesses] on other grounds"); *see also* Rule 52(a), Fed. R. Crim. P.

In sum, the defense attacked Carder's credibility on multiple grounds. The exclusion of Carder's worthless check conviction, therefore, if error at all, was harmless. *See* Rule 52(a), Fed. R. Crim. P.; *see also Capers*, 61 F.3d at 1104.

## C.

Kelly next challenges the sufficiency of the evidence supporting his conviction for traveling in interstate commerce for the purpose of engaging in illicit sexual conduct. We review challenges to the sufficiency of evidence *de novo. See United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001). In doing so, "our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the conviction. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal punctuation omitted). In determining whether the evidence is substantial, we ask whether "a reasonable finder of fact could accept [the evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Importantly, we do not weigh the evidence or assess the credibility of witnesses, but assume that the jury resolved any discrepancies in favor of the government. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

Section 2423(b) criminalizes traveling in interstate commerce "for the purpose of engaging in any illicit sexual conduct with another person." Kelly does not deny that he traveled in interstate commerce, or that he told Carder he wanted to have sex with a child. Rather, he contends that because he was a long-haul trucker who traveled in interstate commerce by trade, there was insufficient evidence that on April 26, 2006, he traveled to West Virginia from North Carolina *for the purpose* of engaging in sex with a child. He points to the fact that he was hauling refrigerated pies for a customer that day as proof that he traveled in interstate commerce for work purposes.

In our view, the jury was presented with ample evidence from which to find beyond a reasonable doubt that Kelly possessed the requisite mental state for the charged offense. In this regard, the jury heard that Kelly, a trucker who traveled in interstate commerce by trade, regularly visited Carder, a prostitute, and asked her to find him

a child with whom to have sex. Indeed, his desire for this illicit sex was so strong that he arrived in Charleston unexpectedly on April 23, 2006, asking for his "birthday present," namely a 12 year-old child with whom to have sex. When Carder did not have a child with whom Kelly could have sex, she told him to return three days later to have sex with the child. Kelly did so. The jury also heard that it was unusual for Kelly to visit the Go-Mart twice in three days, as he usually stopped there only every other week.

The jury also heard that, upon seeing Carder, Kelly asked for the child, took Viagra pills, and explained to Carder in detail what he planned to do sexually with the child. The police also found $310 in cash in Kelly's truck, which would have covered the $200 fee Carder had proposed for finding the child for Kelly. Finally, when questioned by the police after his arrest, Kelly admitted to meeting with Carder three days prior to his arrest and that his intent in returning on the day of his arrest was to meet Carder and the 12 year-old.

In sum, there is more than ample evidence from which the jury could have found the requisite intent for the charged crime.

### D.

Kelly next challenges the district court's denial of his motion to dismiss the indictment on the ground that an actual minor must be involved in order to secure a conviction under § 2423(b). In support of his argument, Kelly cites the language of the statute, which criminalizes traveling in interstate commerce "for the purpose of engaging in any illicit sexual conduct *with another person*." 18 U.S.C. § 2423(b) (emphasis added). Kelly claims that because there was no specific child placed at risk, but rather only a hypothetical victim, he did not violate the statute. In other words, Kelly argues that allowing a conviction to stand under § 2423(b) when only a hypothetical victim is involved renders the words "with another person" superfluous. In response, the government points out that the statute condemns no more than (1) traveling in interstate commerce (the jurisdictional basis) with (2) intent to engage in illicit sexual conduct. Put differently, the government argues that the linchpin of the statute is the prohibited intent, and not whether an identifiable child was put at risk. The district court accepted the government's argument, and we

review this decision *de novo*. *See United States v. Kennedy*, 372 F.3d 686, 696 (4th Cir. 2004).

While this circuit has not previously addressed whether an actual child must be involved in order to secure a conviction under § 2423(b), other circuits have done so and have uniformly rejected Kelly's argument.[7] Today we join our sister circuits in this regard, holding that the government need not prove an actual minor was placed at risk in order to secure a conviction under § 2423(b). This sensible result follows from the clear language of the statute, under which a conviction "turns simply on the illegal purpose for which [the defendant] traveled." *See Root*, 296 F.3d at 1331. The statute is

---

[7]*See, e.g.*, *United States v. Hicks*, 457 F.3d 838, 841 (8th Cir. 2006) (holding that "a defendant may be convicted of violating § 2423(b) if he or she travels in interstate commerce with the purpose of engaging in criminal sexual conduct with a person believed to be a minor regardless of whether such person is actually a minor"); *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (same); *United States v. Sims*, 428 F.3d 945, 959 (10th Cir. 2005) (same); *United States v. Vail*, 101 Fed. Appx. 190, 192 (9th Cir. 2004) (same); *United States v. Root*, 296 F.3d 1222, 1231-32 (11th Cir. 2002) (same); *see also United States v. Vang*, 128 F.3d 1065, 1069 (7th Cir. 1997) (noting that a conviction under § 2423(b) turns on the purpose for which the defendant traveled, i.e., to engage in illicit sexual conduct with a minor).

We and other circuits have reached the same result in connection with 18 U.S.C. § 2422(b), which prohibits a person from using the mail or interstate commerce to "knowingly persuade[ ], induce[ ], entice[ ], or coerce[ ]" someone under age 18 "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt[ ] to do so." § 2422(b). These courts have uniformly rejected the argument that an actual child must be placed at risk to secure a conviction under § 2422(b). *See, e.g.*, *United States v. Helder*, 452 F.3d 751, 753-56 (8th Cir. 2006); *United States v. Davis*, 165 Fed. Appx. 586, 588 (10th Cir. 2006); *United States v. Meek*, 366 F.3d 705, 717-20 (9th Cir. 2004); *United States v. Farner*, 251 F.3d 510, 512-13 (5th Cir. 2001); *see also United States v. Kaye*, No. 06-5277, 2007 WL 1978226 (4th Cir. 2007) (affirming by unpublished opinion the district court's ruling that no actual minor must be placed at risk for a conviction under 18 U.S.C. § 2422(b), but not explicitly addressing that question as applied to § 2423(b)).

designed "to protect minors from predatory sexual conduct by adults." *Vang*, 128 F.3d at 1069. It would be anomalous to allow prosecution of those individuals who successfully place a specific, identified child in danger, yet set free those who possess the prohibited intent, but are prevented from placing a real child in danger by effective law enforcement.[8]

E.

Finally, Kelly challenges the district court's imposition of a 63-month sentence. We review a district court's sentence for reasonableness. *See United States v. Booker*, 543 U.S. 220, 264 (2005); *United States v. Hughes*, 401 F.3d 540, 546-47 (4th Cir. 2005). *Booker* requires a district court to calculate the appropriate guidelines range, making the requisite, appropriate factual findings and considering whether any authorized departures may be appropriate. *See United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006). The district court should then determine an appropriate sentence, taking into account both the advisory sentencing guidelines range and the factors set forth in 18 U.S.C. § 3553(a). *Id.* The sentence must be "sufficient, but not greater than necessary" to achieve the goals of sentencing. § 3553(a). And importantly, "a sentence within the proper advisory Guidelines range is presumptively reasonable." *United States v. Johnson*, 445 F.3d 339, 341 (4th Cir. 2006); *see Rita v. United States*, 127 S.Ct. 2456, 2462-68 (2007) (upholding a presumption of reasonableness for sentences within guidelines range).

---

[8]Kelly's reliance on *United States v. Childress*, 104 F.3d 47 (4th Cir. 1996), is misplaced. There, this circuit interpreted a previous version of § 2423(b), which, because of a drafting error, defined a "sexual act" by cross-referencing 18 U.S.C. § 2445. That section required that sexual abuse result in death. In *Childress*, we held that under that version of the statute, the defendant could not be convicted where he was not charged with intent to engage in illicit sexual conduct resulting in the death of a minor. *Id.* at 52-53. Importantly, we did not hold that a *specific minor* must be identified to sustain a charge under the statute, but held only that the government must prove the defendant intended to engage in sexual abuse resulting in death. After *Childress*, Congress amended the statute. The current version of the statute prohibits the intent to engage in illicit sexual conduct with another person, even if that person is not identified.

In this case, the district court properly calculated the guidelines range as between 51 and 63 months, based on Kelly's offense level of 24 and criminal history category of I. It then imposed a sentence of 63 months, the top of the advisory guidelines range. In doing so, the district court explicitly rejected Kelly's argument that because no actual minor child was involved and because Kelly's prior conviction was 22 years prior to the charged crime, Kelly should be sentenced at the lower end of the guidelines range. On the record presented, the district court appropriately found that Kelly's "predilection for sexual violence" and the fact that Kelly took substantial steps toward having sex with a minor militated against imposing a sentence at the low end of the advisory guidelines range. J.A. 538.

In sum, the district court appropriately considered the advisory guidelines, the § 3553(a) factors, and counsel's arguments before imposing Kelly's sentence. Nothing in the record rebuts the presumptive reasonableness of the 63-month sentence, which is within the guidelines range and below the thirty-year statutory maximum.

## III.

Based on the foregoing, we affirm the judgment of the district court.

*AFFIRMED*