**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4593**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

KEVIN JOHN WITASICK,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Jackson L. Kiser, Senior District Judge.  (4:07-cr-00030-jlk)

Submitted:  July 29, 2011          Decided:  August 18, 2011

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jerald C. Thompson, Tempe, Arizona, for Appellant.  Frank P. Cihlar, Gregory Victor Davis, Tax Division, DEPARTMENT OF JUSTICE, Washington, D.C.; Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kevin John Witasick appeals his conviction and fifteen-month sentence for two counts of tax evasion in violation of 26 U.S.C. § 7201 (2006), two counts of tax perjury in violation of 26 U.S.C. § 7206(1) (2006), one count of failure to file a tax return in violation of 26 U.S.C. § 7203 (2006) and one count of health care fraud in violation of 18 U.S.C. § 1347 (2006). He argues that insufficient evidence supported his convictions and that the trial on the tax counts was infected by prosecutorial misconduct. We affirm.

Briefly, the Government alleged that Witasick, who was an attorney in the Arizona firm of Witasick, Parker, and Thompson before moving to Virginia in 1999, owned Stoneleigh, a historic property in Stanleytown, Virginia. While Witasick operated an office of the Arizona firm out of Stoneleigh, he claimed, on his 1999 tax return, that 75% of the (considerable) funds he spent remodeling and renovating Stoneleigh were deductable as business expenses. In 2000, he claimed that 100% of the expenses were deductable. He filed no tax return in 2001. The resulting tax loss alleged by the Government was over $100,000.

At the same time, Witasick falsely claimed that Stoneleigh's groundskeeper (and Witasick's personal trainer)

2

Zeke Ca-stle[1] was the property manager of his firm's Virginia office, and listed Ca-stle as an employee on his firm's group health insurance plan.

## I.   Insufficient Evidence (Tax Charges)

Witasick first argues that insufficient evidence supported his convictions for tax evasion, filing a false tax return, and failure to file.  He argues that he was entitled to rely on the advice of his accountant and his attorney; in the alternative, he alleges that the Government adduced no evidence of tax loss.

We review de novo challenges to the sufficiency of the evidence supporting a jury verdict.  United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007).  "A defendant challenging the sufficiency of the evidence faces a heavy burden."  United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).  We review a sufficiency of the evidence challenge by determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Collins, 412 F.3d 515, 519

---

[1] Although the parties use the spelling Castle in the briefs, we have used the spelling Ca-stle gave when he identified himself during the trial.

3

(4th Cir. 2005)(quoting United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990)). We review both direct and circumstantial evidence, and accord the government all reasonable inferences from the facts shown to those sought to be established. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). In reviewing for sufficiency of the evidence, we do not review the credibility of the witnesses, and assume that the jury resolved all contradictions in the testimony in favor of the government. Kelly, 510 F.3d at 440. We will uphold the jury's verdict if substantial evidence supports it, and will reverse only in those rare cases of clear failure by the prosecution. Foster, 507 F.3d at 244-45.

In order to establish a violation of 26 U.S.C. § 7201 (2006), the Government must prove that Witasick acted willfully and "committed an affirmative act that constituted an attempted evasion of tax payments" and, as a result, "a substantial tax deficiency existed." United States v. Wilson, 118 F.3d 228, 236 (4th Cir. 1997). Moreover, in order to obtain a conviction for filing false tax returns and failing to file tax returns, the Government must similarly prove that Witasick's actions were willful. See United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996) (filing false tax returns); United States v. Ostendorff, 371 F.2d 729, 730 (4th Cir. 1967) (failing to file tax returns).

4

Willfulness, in this context, means a "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991)(quoting United States v. Bishop, 412 U.S. 346, 360 (1973)). A belief, in good faith, that one has complied with the tax laws negates willfulness and is therefore a defense, even if the belief is unreasonable. See id. at 201-02. In other words, the Government must demonstrate that Witasick did not have a subjective belief, however irrational or unreasonable, that he was compliant with tax laws.

"Good faith reliance on a qualified accountant has long been a defense to willfulness in cases of tax fraud and evasion." United States v. Bishop, 291 F.3d 1100, 1107 (9th Cir. 2002). The good faith reliance defense is not applicable, however, where the defendant has failed to fully and accurately disclose all relevant tax-related information to the accountant upon whose advice the defendant claims reliance. See, e.g., Bishop, 291 F.3d at 1107; United States v. Masat, 948 F.2d 923, 930 (5th Cir. 1991). This is so because if a defendant did not make full disclosure to his accountant, he likely did not act in good faith. See Bishop, 291 F.3d at 1107; see also United States v. DeClue, 899 F.2d 1465, 1472 (6th Cir. 1990) ("A taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information

5

from those persons relative to taxable events and then escape responsibility for the false tax returns which result.").

We have reviewed the evidence adduced at trial, and we conclude that the Government adduced ample evidence of Witasick's guilt, and the jury properly concluded that he did not rely on the advice of his accountant. In fact, the evidence reveals that Witasick directed his accountant to over-deduct his business expenses, despite being repeatedly informed by the accountant that only business expenditures were deductable. Thus, there is no basis in the record for Witasick's claim that he relied in good faith on the advice of his tax preparer.

The same is true of Witasick's claim with regard to his failure to file charge. The evidence shows that Witasick was not told by his attorney not to file a tax return until more than a year after the return was due, at which time the offense was complete.

Witasick argues in the alternative that the Government did not adduce admissible evidence of a tax loss. We do not agree. As discussed above, in order to prove a violation of § 7201, the Government must prove, among other elements, "the existence of a tax deficiency." Boulware v. United States, 552 U.S. 421, 424 (2008)(quoting Sansone v. United States, 380 U.S. 343, 351 (1965); see also Wilson, 118 F.3d at 236. To show a tax deficiency, the Government must prove first that the

6

taxpayer "had unreported income, and second, that the income was taxable." United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). The Government need not prove the precise amount of the tax due and owing. United States v. Citron, 783 F.2d 307, 314-15 (2d Cir. 1986). To prove a violation of 26 U.S.C. § 7206(a), tax perjury, the Government must prove that "(1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996).

The gravamen of Witasick's objection is that the Government's summary witness, IRS agent Jacqueline English, exceeded the scope of summary testimony and testified as an expert. We need not resolve this claim, however, as multiple witnesses testified that the amount of space at Stoneleigh being used for business purposes was considerably less than 75% and 100% in the tax years 1999 and 2000, respectively. Thus, the Government adduced sufficient evidence that tended to show that Witasick over-deducted his business expenses, and substantially so. Thus, the jury could properly infer that Witasick made material representations in his tax return that resulted in a

7

tax deficiency.  We therefore affirm his convictions for the tax-related charges.

II.  Sufficiency of the Evidence (Health Care Fraud)

Witasick next argues that there was no evidence that he personally acted to place Ca-stle on his firm's health insurance policy, that he and the law firm were one and the same, and that this type of case falls outside the scope of 18 U.S.C. § 1347.

To prove health care fraud, the Government had to prove that Witasick "knowingly and willfully executed a scheme to defraud any health care benefit program."  United States v. Girod, Nos. 10-30128, 10-30339, 2011 WL 2675925, at *5 (5th Cir. July 11, 2011); see 18 U.S.C. § 1347.  To prove a scheme to defraud, the Government had to show that Witasick "acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence."  United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001) (internal quotation marks omitted).  In particular, we look to the "common-law understanding of fraud," which includes "acts taken to conceal, create a false impression, mislead, or otherwise deceive."  United States v. Colton, 231 F.3d 890, 898 (4th Cir. 2000).

8

Turning to Witasick's first claim that there was no evidence that he directed Ca-stle's name be placed on the health care policy, we find the claim belied by the record. Ample evidence was introduced that showed that Witasick, either alone or in concert with his law partners, made the decision to falsely list Ca-stle as a law firm employee. Furthermore, the Government adduced evidence that Witasick made false representations to representatives from Anthem, the insurer, when questioned about Ca-stle's employment status. Thus, we conclude that the Government adduced substantial evidence that Witasick engaged in fraud.

We also reject Witasick's argument that he and his law firm were one and the same at the time the alleged misconduct occurred. Anthem's representative testified that Anthem had a policy with "Witasick, Parker & Thompson," the law partnership, rather than with "Witasick & Associates," the sole proprietorship that existed after Witasick falsely listed Ca-stle as an employee. Thus, Witasick's claim that his personal employee could be considered his firm's employee is without merit.

Finally, we turn to Witasick's argument that § 1347, the statute under which Witasick was prosecuted, does not contemplate criminal liability for the activities alleged. We review questions of statutory interpretation de novo. United

9

States v. Carr, 592 F.3d 636, 639 n.4 (4th Cir. 2010). In interpreting the scope of a statute, we look first to the language of the statute. See North Carolina ex rel. Cooper v. Tenn. Valley Auth., 515 F.3d 344, 351 (4th Cir. 2008).

Here, the language of the statute provides that a person is guilty of health care fraud if he:

> knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services[.]

18 U.S.C. § 1347. While Witasick seeks to invoke the rule of lenity that ambiguous criminal statutes must be construed in favor of the accused, we conclude that the statute is not ambiguous. Witasick was convicted of knowingly making false statements to Anthem and its representative, and with improperly listing Ca-stle on the law firm's group health insurance policy -- a classic example of a scheme to defraud. This conduct falls squarely within the statute's ambit, and no further inquiry into

10

the legislative history is required.[2]  Thus, we affirm his health care fraud conviction.

### III.  Prosecutorial Misconduct

Finally, Witasick argues that he was the victim of prosecutorial misconduct.  He claims that the prosecutor was required to present exculpatory evidence to the grand jury and did not do so.  To succeed on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was improper and that it "prejudicially affected his substantial rights so as to deprive him of a fair trial."  United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002).  "In reviewing a claim of prosecutorial misconduct, we review the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. (internal quotation marks omitted).

Witasick's argument that the prosecution must present exculpatory evidence to the grand jury is similar to that rejected by the Supreme Court in United States v. Williams, 504 U.S. 36, 44-46 (1992).  While Witasick seeks to distinguish

---

[2]  Our conclusion is supported by the Second Circuit's decision in United States v. Josephberg, 562 F.3d 478 (2d Cir. 2009), a case in which the court affirmed a conviction under § 1347 for conduct virtually identical to that at issue here.

11

<u>Williams</u>, we find his attempts unpersuasive.  The Court was emphatic that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with [the adversarial] system."  <u>Id.</u> at 52.  We also find no support in Witasick's claim that the Citizens Protection Act, 28 U.S.C. § 530B(a) and the Virginia Rules of Professional Conduct require such disclosure.

Accordingly, we affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

12