**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-4182**

─────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

CHRISTOPHER C. RICE,

            Defendant - Appellant.

─────────────

**No. 13-4183**

─────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

SAMUEL B. JACOBS,

            Defendant - Appellant.

─────────────

Appeals from the United States District Court for the Eastern District of Virginia, at Newport News.  Mark S. Davis, District Judge.  (4:10-cr-00149-MSD-TEM-2; 4:10-cr-00149-MSD-TEM-1)

─────────────

Submitted:  November 26, 2013      Decided:  January 7, 2014

─────────────

Before TRAXLER, Chief Judge, and DAVIS and THACKER, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

———————————

Jon M. Babineau, RIDDICK BABINEAU, PC, Norfolk, Virginia, for Appellant Jacobs.   Lawrence H. Woodward, Jr., SHUTTLEWORTH, RULOFF, SWAIN, HADDAD & MORECOCK, PC, Virginia Beach, Virginia, for Appellant Rice.   Jeffrey H. Knox, Chief, Justin Goodyear, Fraud Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Brian J. Samuels, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Samuel Jacobs ("Jacobs") and Christopher Rice ("Rice") were charged in a 29-count superseding indictment with conspiracy to commit mail fraud, multiple counts of mail fraud, multiple counts of money laundering, and multiple counts of forgery, all of which arose out of a fraudulent investment scheme.

Jacobs was convicted, after a jury trial, of all counts except for conspiracy to commit mail fraud (Count 1) and one of the mail fraud counts (Count 6). The district court sentenced Jacobs to 144 months imprisonment on Counts 2-5 and 15-20, and 120 months imprisonment on Counts 7-14 and Counts 21-29, all to be served concurrently. On appeal, Jacobs challenges the sufficiency of the evidence at trial as well as the calculation of his Sentencing Guidelines range.[1] Rice was found guilty by the same jury of seven counts of transactional money

---

[1] Jacobs has filed a motion for leave to file a pro se supplemental brief, along with a pro se supplemental brief. Because Jacobs is represented by counsel who has filed an extensive merits brief, as opposed to a brief pursuant to Anders v. California, 386 U.S. 738 (1967), he is not entitled to file a pro se supplemental brief and we, therefore, deny his motion. See United States v. Penniegraft, 641 F.3d 566, 569 n.1 (4th Cir. 2011) (denying motion to file pro se supplemental brief because the defendant was represented by counsel), cert. denied, 132 S.Ct. 564 (2011).

laundering (Counts 8-14) and of one count of forgery (Count 25), and not guilty of the remaining counts against him.[2]  Rice was sentenced to two five-year terms of probation, to run concurrently, with no term of imprisonment.  Rice's sole challenge on appeal is the sufficiency of the evidence at trial.

We have reviewed the record and find no reversible error.  Accordingly, we affirm.

I.

Both Jacobs and Rice contend that the Government presented insufficient evidence at trial to support their convictions.  It is well settled that "[a] defendant challenging the sufficiency of the evidence faces a heavy burden."  United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).  We review such challenges de novo.  United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007).  In so doing, "we view the evidence on appeal in the light most favorable to the government in determining whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt."  United States v. Cone, 714 F.3d 197, 212 (4th Cir. 2013) (citing United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005)).  We do not weigh the evidence or review the credibility of the

---

[2]  Rice was not charged in Counts 15-20 of the superseding indictment for money laundering to conceal mail fraud, in violation of 18 U.S.C. § 1956.

trial witnesses, and we assume that the jury resolved all discrepancies in testimony in favor of the government. See id. "We will uphold the jury's verdict if substantial evidence supports it and will reverse only in those rare cases of clear failure by the prosecution." Id.

A.

Jacobs first contends that there was insufficient evidence to support his mail fraud convictions. To convict an individual of mail fraud, in violation of 18 U.S.C. § 1341, the Government must prove beyond a reasonable doubt that the defendant: (1) devised a scheme to defraud; and (2) used the mails in furtherance of the scheme. See United States v. Wynn, 684 F.3d 473, 477 (4th Cir. 2012). Proof of a "scheme to defraud" requires proof of "the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method, which indeed would cause him harm." Id. at 478. Jacobs argues only that the Government failed to prove beyond a reasonable doubt that he had the specific intent to deprive Alliance's investors of their money. Therefore, only the first element of mail fraud is at issue here.

When viewed in the light more favorable to the Government, it is clear that substantial evidence was presented for a rational jury to conclude beyond a reasonable doubt that Jacobs engaged in mail fraud. The evidence demonstrated that

5

Jacobs falsely told investors that the money invested with Alliance Financial Services, Inc. ("Alliance") would be put into legitimate investment vehicles, such as real estate.[3] He also falsely represented to investors that the investments would earn interest and that the investments were secure and backed by Jacobs' personal assets. In addition, Jacobs misleadingly failed to disclose the actual use of Alliance funds, which included transfers to JBS, transfers to pay off Jacobs' own personal and business debts, and repayments of earlier investors. There was substantial evidence for a rational trier of fact to conclude that Jacobs made these misrepresentations and omissions to investors with the intent to induce victims to invest and reinvest their money with Alliance.

B.

Jacobs and Rice both argue that there was insufficient evidence to support their convictions for transactional money

---

[3] In 1998, Jacobs organized and formed JBS, Inc. ("JBS") in Newport News, Virginia. JBS operated several low power television stations, which broadcasted religious sermons in local markets from area pastors and sold advertising and airtime. Jacobs was the president of JBS and owned the majority of its shares. Rice began working at JBS in the early 2000s, handling the technical operations for the television stations.

In 2005, JBS and Jacobs were experiencing significant financial problems -- the debts of JBS and Jacobs totaled approximately $1.9 million. In December 2005, Jacobs incorporated Alliance. Jacobs was the president of Alliance, and Rice was its secretary/treasurer.

6

laundering. The offense of transactional money laundering, in violation of 18 U.S.C. § 1957(a), requires the Government to prove beyond a reasonable doubt that the defendant knowingly engaged "in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a); United States v. Cherry, 330 F.3d 658, 668 (4th Cir. 2003). "Criminal derived property" is defined by statute as "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). Therefore, to convict Jacobs and Rice of this offense, the jury was required to find: (1) that Jacobs and Rice knowingly participated in a monetary transaction involving criminally derived property; and (2) that the criminally derived property was proceeds derived from specified unlawful activity -- that is, the mail fraud in Counts 2-6 under 18 U.S.C. § 1341. See Cherry, 330 F.3d at 668.

With respect to Jacobs, his sole challenge to his convictions for transactional money laundering is entirely derivative of his challenge to his mail fraud convictions. Specifically, Jacobs argues that because he did not engage in mail fraud, he necessarily could not have been convicted of transactional money laundering. However, as explained above, Jacobs' mail fraud convictions were supported by substantial

7

evidence. Therefore, his argument challenging his convictions for transactional money laundering fails.

Turning now to Rice, he first argues that the evidence at trial was insufficient to show that he personally effected the transfers that supported Counts 8-14. He contends that the Government offered no testimony or evidence to indicate which defendant signed the checks or transferred the funds. This argument is unpersuasive. The Government presented substantial evidence of the differences between the checks to which Jacobs admitted to signing Rice's name and the other checks written from Alliance's bank account. Some of these differences included the manner in which the "payee" line and the "amount" line was written. In addition, the Government presented differing "Chris Rice" signatures, which demonstrated one style of signature on the check that Jacobs acknowledged he signed and a different style on the remaining checks that support Counts 8-14. Finally, the Government presented the jury with checks from Rice's personal bank account. The jury was permitted to compare authentic handwriting (i.e., on Rice's personal checks) to contested handwriting (i.e., on checks supporting Counts 8-14) and conclude that they match. See United States v. Dozie, 27 F.3d 95, 98 (4th Cir. 1994) (explaining that under Federal Rule of Evidence 901(b)(3), expert opinion on handwriting is not necessary). Therefore, there was substantial evidence to

8

support the jury's conclusion that Rice personally effected the transfers that supported Counts 8-14.

Rice next argues that the Government failed to demonstrate that Rice knew that the funds in question involved criminally derived property. Rice contends that the Government did not present any evidence that Rice knew of any fraudulent activity separate from that which was presented in Count 1 (Conspiracy) and Counts 2-6 (Mail Fraud), which was rejected by the jury as to Rice. While it is true that the jury returned not guilty verdicts for the conspiracy and mail fraud charges with respect to Rice, there was evidence presented at trial that Rice was aware that the funds he was transferring from Alliance to JBS came from Jacobs' fraud on the investors. Specifically, Rice's notes from board meetings demonstrated that he was aware of Jacobs' misrepresentations to Alliance investors. Nevertheless, Rice wrote a number of checks from Alliance's account for purposes that were inconsistent with the representations that he knew Jacobs had made to investors. In addition, there was evidence that Rice told investor Susan Canning, who invested $100,000 with Alliance, that Alliance funds would be used to offer mortgages and loans to members of the church. The evidence, however, demonstrated that Alliance funds were actually transferred to JBS, Jacobs, and Rice. Therefore, there was substantial evidence to support the jury's

9

conclusion that Rice knowingly participated in a monetary transaction involving criminally derived property.[4]

Finally, Rice relies on the Supreme Court's decision in United States v. Santos, 553 U.S. 507 (2008) to argue that the term "proceeds" in 18 U.S.C. § 1957 should be defined narrowly to mean only "profits" and not the "total receipts" from unlawful activity. As the Government correctly explains, Santos is inapplicable here. Our court has summarized the Supreme Court's holding in Santos as follows: "in order to avoid a merger of the crimes of money laundering and operating an illegal gambling business, the term 'proceeds' in the money laundering statute must be construed to mean 'net profits,' not 'gross receipts,' of the illegal gambling business." United

---

[4] Although the jury acquitted Rice of the mail fraud and the conspiracy to commit mail fraud counts, this does not mean that there was insufficient evidence to support a jury's finding that Rice knew the funds at issue in Counts 8-14 came from unlawful activity. The mens rea requirement under the statute is only that the defendant knows that the monetary transaction involves "criminally derived property." 18 U.S.C. § 1957(a). Criminally derived property "means any property constituting, or derived from, proceeds obtained from a criminal offense." Id. § 1957(f)(2). Indeed, "the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity." Id. § 1957(c) (emphasis supplied). All the Government must prove is that the defendant knew that the property was obtained from some criminal offense. Therefore, Rice's acquittals relating to mail fraud -- which is "specified unlawful activity" under the statute -- does not automatically mean that there was insufficient evidence to support Rice's conviction for transactional money laundering.

10

States v. Halstead, 634 F.3d 270, 271 (4th Cir. 2011). We further explained that "when the illegal activity includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the [G]overnment uses those transactions also to prosecute the defendant for money laundering." Id. at 279. Here, however, "the financial transactions of the predicate offense" -- i.e., Jacobs' mail fraud -- "are different from the transactions prosecuted as money laundering" -- i.e., Rice's subsequent transfers of Alliance funds. See id. at 279-80. Therefore, there is no merger problem and Santos does not apply.

C.

Jacobs next argues that there was insufficient evidence to support his additional money laundering convictions in Counts 15-20. The offense of money laundering to conceal mail fraud, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), requires the Government to prove beyond a reasonable doubt the following four elements: (1) an actual or attempted financial transaction; (2) involving the proceeds of a specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) knowledge that the transaction was designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity. Cone, 714 F.3d at 214.

11

Just like Jacobs' challenge to his convictions for transactional money laundering described above, Jacobs' sole challenge to his convictions for money laundering to conceal mail fraud is entirely derivative of his challenge to his mail fraud convictions. Specifically, Jacobs argues that because he did not engage in mail fraud, he necessarily could not have been convicted of money laundering to conceal mail fraud. However, as explained above, Jacobs' mail fraud convictions were supported by substantial evidence. Therefore, his argument challenging his convictions for money laundering to conceal mail fraud fails.

D.

Finally, both Jacobs and Rice contend that there was insufficient evidence to support their convictions for forgery. To convict an individual of possessing and uttering a forged security, in violation of 18 U.S.C. § 513(a), the Government must prove beyond a reasonable doubt that the defendant did (1) make, utter, or possess (2) a forged security of an organization (3) with intent to deceive another person, organization, or government. 18 U.S.C. § 513(a).

With respect to Jacobs, when viewed in the light most favorable to the Government, substantial evidence was presented for a rational jury to conclude beyond a reasonable doubt that Jacobs possessed and uttered a forged security with the intent

12

to deceive another person. Rice was the only signatory on Alliance's bank account, and a bank representative testified that no one other than Rice was authorized to sign checks from the Alliance account. However, there was substantial evidence at trial from which a jury could conclude that Jacobs signed Rice's name to numerous checks from Alliance's bank account without authorization. A number of examples of the handwriting of Jacobs and Rice were introduced during the course of trial. In particular, Jacobs stipulated to having prepared and signed Rice's name to the check supporting Count 25, and he testified to having repeatedly signed Rice's name on Alliance checks. The check supporting Count 25 as well as various other checks were presented to the jury. The jury was entitled to consider the handwriting evidence and the testimony regarding who signed the various checks to determine whether Jacobs possessed and uttered a forged security. See Dozie, 27 F.3d at 98. Accordingly, there was substantial evidence for the jury to convict Jacobs of Counts 21 through 29.

Turning next to Rice, when viewed in the light most favorable to the Government, substantial evidence was presented for a rational jury to conclude beyond a reasonable doubt that Rice possessed and uttered a forged security in support of his conviction for Count 25. Count 25 relates to a check written by Jacobs to Pastor Willie Royster on August 21, 2007 from the

13

Alliance account, on which Jacobs signed Rice's name. Pastor Royster had requested a withdrawal of the funds he had invested in Alliance because of his dissatisfaction with Jacobs and Alliance. The August 21, 2007 check bounced. At a September 2007 board meeting, Rice attempted to explain what happened, claiming that the bad check was written from the wrong Alliance account. The evidence at trial, however, revealed that Alliance only had one bank account. Rice's attempted explanation was evidence from which a jury could concluded that Rice had knowledge and involvement with the August 21, 2007 check, which the jury concluded was a forgery to support Jacobs' Count 25 conviction.

Moreover, because Rice was the sole authorized signer on Alliance's account, Rice received account statements, which would have demonstrated a number of instances in which Jacobs admittedly signed Rice's name to Alliance checks. Indeed, based on the evidence that Rice regularly received Alliance account statements that indicated checks had been signed by someone other that Rice, the jury was permitted to infer that Rice made Alliance checks available to Jacobs despite Rice's knowledge of Jacobs' practice of signing Rice's name to checks. One such check was the August 21, 2007 check, which all parties stipulated was signed by Jacobs. Therefore, there was substantial evidence for the jury to convict Rice of Count 25.

14

As an alternative to his sufficiency of evidence arguments, Jacobs challenges the district court's calculation of his Sentencing Guidelines range. We review a sentence for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). In considering whether a district court properly applied the Sentencing Guidelines, "we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008) (internal quotation marks omitted). Clear error exists "only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Manigan, 592 F.3d 621, 631 (4th Cir. 2010) (internal quotation marks and alterations omitted).

A.

Jacobs first argues that the district court erred in adopting the Presentence Report's (the "PSR") calculation of attributable loss at more than $400,000 and assessing a corresponding 14-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(1)(H). When calculating attributable loss, the Guidelines provide for certain amounts to be credited toward the loss. The commentary to the Guidelines states, "[i]n a case involving collateral

15

pledged or otherwise provided by the defendant," the amount to be credited toward the loss is "the amount the victim has recovered at the time of sentencing from disposition of that collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." U.S.S.G. § 2B.1.1 cmt. n.3(E)(ii).

Jacobs contends that the district court should have credited, against his attributable loss, the value of the "collateral" that Jacobs "pledged" to secure the investments in Alliance. Jacobs cites testimony from trial showing that he executed multiple promissory notes pledging those assets constituting his personal net worth as collateral to cover all of the loans made from Alliance to JBS and Jacobs personally. According to Jacobs, these assets included television stations and FCC licenses owned by JBS, which had a fair market value of between two and half and three million dollars. Jacobs is wrong.

As the Government notes, "collateral" refers to property that is pledged as security against a debt. See Black's Law Dictionary (9th ed. 2009). Neither the promissory notes nor Jacobs' oral guarantees ever identified any specific "property" that served as security for the investor's investments in Alliance. Although Jacobs owned the television stations and the potentially valuable FCC licenses that came

16

with them, the testimony at trial revealed that one cannot grant a security interest in an FCC license.  As such, it was not clearly erroneous for the district court to refuse to credit the fair market value of the FCC licenses against Jacobs' attributable loss.  Accordingly, the district court did not err in adopting the PSR's calculation of attributable loss at more than $400,000 and assessing a corresponding 14-level enhancement.

### B.

Jacobs next argues that the district court erred by assessing a four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B), which provides that the offense level should be increased four levels if the offense involved 50 or more victims.  The commentary to the Guidelines defines "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1)."  U.S.S.G. § 2B1.1 cmt. n.1.  "Actual loss" in turn is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."  Id. § 2B1.1 cmt. n.3(A)(i).  Jacobs contends that because many of the investors were reimbursed for their losses prior to sentencing, the actual number of victims was less than 50.

Jacobs' PSR contains a chart that identifies 138 victims and lists the amount each gave to Alliance, the amount that was returned, and the amount still owed.  The PSR, which

17

the district court adopted, notes that of the victims who had been repaid, "most were repaid after an investigation was initiated by agents." J.A. 1741.

Jacobs does not challenge this finding, but merely contends that only the 30 victims to whom Jacobs was ordered to pay restitution could be counted as victims. The commentary to U.S.S.G. § 2B1.1, however, makes clear that that is not correct. Specifically, comment 3(E) states:

> (E) <u>Credits Against Loss</u>.—Loss shall be reduced by the following:
> (i) The money returned . . . by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

U.S.S.G. § 2B1.1 cmt. n.3(E). This comment demonstrates that the amounts obtained by Alliance but repaid after Jacobs had reason to know his offense was detected or about to be detected constitute part of the actual loss. As such, the people and entities from whom Alliance obtained this money constitute victims of his offense, regardless of whether they were still owed money at the time of sentencing. Accordingly, the district court did not err in concluding that Jacobs' offense involved 50 or more victims.

18

C.

Jacobs next challenges the district court's inclusion of a two-level enhancement after finding that Jacobs' conduct in running Alliance constituted "sophisticated means" of fraud pursuant to U.S.S.G. § 2B1.1(b)(10). The commentary to the Guidelines defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense." Id. § 2B1.1 cmt. n.8(B). Examples of sophisticated means include "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." Id.

In this case, the district court found that the sophisticated means enhancement was appropriate because Alliance did not conduct any real investing or any legitimate business. Instead, it existed solely so that Jacobs could hide from the investors the transactions in which he paid his old business debts and personal expenses. In addition, Jacobs made misrepresentations to the board members so they would recruit additional investors into Alliance. Jacobs promised high returns on investments, but he initially repaid investors the promised rates using other investors' money. These findings were not clearly erroneous.

19

Jacobs promised investors that he would safely invest their money, but instead he transferred it to JBS, to himself, and to Rice. All the while, Jacobs assured investors that their investments were safe and earning a return. Jacobs engaged in conduct amounting to intentional concealment so that he could improperly use investor funds. Accordingly, the district court's findings were supported by substantial evidence, and it did not err in applying the sophisticated means enhancement.

D.

Lastly, Jacobs challenges the four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The commentary to the Guidelines explains that, in considered whether a scheme is "otherwise extensive," the district court may consider "all persons involved during the course of the entire offense." Id. § 3B1.1 cmt. n.3. For instance, "a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Id. (emphasis supplied).

In this case, the evidence is clear that Jacobs organized and led Rice through the participation of Jacobs' scheme to defraud Alliance investors. Therefore, Jacobs was an "organizer or leader of criminal activity." Further, the

20

district court's finding that the scheme was "otherwise extensive" was not clearly erroneous. Indeed, Jacobs created and maintained a business entity for more than three and a half years, fraudulently obtained money from 138 different individuals and entities, and relied on the unwitting participation of at least six pastors whom Jacobs made board members of Alliance. Jacobs was dishonest with the board members, each of whom then solicited investments from their church members. Considering these facts, the district court did not err in finding that Jacobs was a leader or organizer of criminal activity that was "otherwise extensive."

III.

For the reasons stated, we affirm Jacobs' conviction and sentence. We also affirm Rice's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED