**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

v.

G. MARTIN WYNN,

     *Defendant-Appellant.*

No. 11-4859

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
G. Ross Anderson, Jr., Senior District Judge.
(8:10-cr-01026-GRA-1)

Argued: May 15, 2012

Decided: June 29, 2012

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** Shimica D. Gaskins, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant. Jeffrey Bryan Wall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Catherine C. Stern, COVINGTON & BURLING, LLP, Washington, D.C.,

for Appellant. William N. Nettles, United States Attorney,
Winston D. Holliday, Jr., Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Colum-
bia, South Carolina, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

G. Martin Wynn, a professional engineer with the engineer-
ing firm of Talbert & Bright, Inc., was convicted of mail fraud
and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343,
based on his performance of services to Oconee County,
South Carolina, in connection with its project to extend the
runway at the Oconee County Regional Airport. Instead of
procuring a required permit for the runway extension project
from the South Carolina Department of Health and Environ-
mental Control ("DHEC"), Wynn cut a valid permit off of an
older set of plans prepared for a previous airport project and
fraudulently attached that permit to the plans for the runway
extension. He then *mailed* the fraudulently permitted plans to
Oconee County and later *emailed* them to the DHEC. Follow-
ing his conviction, the district court sentenced Wynn to 12
months and 1 day in prison and ordered him to pay Oconee
County $118,000 in restitution.

On appeal, Wynn contends that the district court erred in
instructing the jury on the mail fraud and wire fraud statutes
and that the evidence was insufficient to convict him on the
offenses had they been properly presented to the jury. He also
challenges the district court's calculation of the amount of
loss found for purposes of sentencing and ordering restitution.

For the reasons that follow, we affirm.

I

Oconee County contracted with Talbert & Bright, an engi-
neering firm specializing in airports and aviation consulting,

to prepare site plans and obtain the necessary permits from the DHEC to execute its project to extend its runway at the Oconee County Regional Airport. Talbert & Bright employees, notably Al Smith (the project director) and Wynn, were responsible for preparing the construction plans and obtaining the necessary permits for the project.

In April 2009, Wynn drafted a 48-acre storm water and erosion plan for the runway extension. After Al Smith signed off on the plans, Wynn sent them to Oconee County for approval. Oconee County approved the plans by issuing a Notice of Intent ("NOI") to proceed with construction. The normal protocol thereafter would have been for Talbert & Bright to submit the plans, together with the County's NOI, to the DHEC to obtain the required permit. Although Wynn was charged with this task, he never completed it.

Several months later, in October 2009, Oconee County adjusted the airport runway project slightly to include an additional 12 acres in the erosion plan, for a total of 60 acres. This adjustment required adding two pages to the back of the original 48-acre plans, which had been 62 pages.

In November 2009, Smith requested that Wynn send Oconee County a copy of the 48-acre plans stamped with the permit seal from the DHEC. Because Wynn had never procured a permit for the plans, however, he could not fulfill the request. Instead of acknowledging this failure, he cut a DHEC seal off of a set of properly permitted plans that Talbert & Bright had procured for Oconee County to undertake a previous project at the airport to improve visibility on the runway. He then photocopied that seal onto the runway extension project plans and sent the fraudulently permitted 48-acre plans to Oconee County by mail. Kevin Short, the Airport Director who received Wynn's submission, understood that the County needed an adjusted permit for the revised 60-acre plans and could not simply rely on the original 48-acre plans, even if they had been properly permitted. But he testified that he did

not realize that the ostensibly permitted plans that he had received from Wynn were the unrevised, 48-acre version of the plans. He stated that he conducted only a cursory review of the plans because "we were paying Talbert & Bright a lot of money to take care of these things for us," and he "trusted them."

In early February 2010, severe rains at the airport caused extensive runoff of orange-colored water onto adjoining properties, generating complaints from the airport's neighbors. When Airport Director Short inquired of Talbert & Bright about the problem, three of their officials—Smith, Wynn, and Jay Talbert—assured Short that the plans were "okay" and that "the DHEC ha[d] signed off on the plans." But in response to the complaints, DHEC inspectors also visited the site, and they asked to see Oconee County's construction plans. Oconee County provided the DHEC with the plans delivered to it by Wynn, which included the fraudulent seal. Because DHEC only had in its files the plans from the earlier project to improve visibility at the airport, which did not match the runway extension work, it decided to investigate further. When the DHEC asked Wynn to provide a copy of the plans, he emailed the agency the same fraudulently permitted plans that he had previously mailed to Oconee County. Discovering the invalid permit, the DHEC forced Oconee County to cease construction of the runway extension project until the County acquired a valid permit. This took six months. Once the permit for the full 60-acre project was obtained, the County resumed construction of the project.

Based on Wynn's transmission of the fraudulently permitted plans to Oconee County by mail in November 2009 and to the DHEC by email in February 2010, Wynn was indicted and convicted for mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. At sentencing, the district court accepted the government's submission that the amount of loss to be used in calculating Wynn's Sentencing Guidelines range and restitution amount was $118,000, representing the amount

of money Oconee County paid to Talbert & Bright in fees between November 2009, when Wynn submitted the fraudulently permitted plans, and February 2010, when the DHEC forced Oconee County to stop work on the project. The district court sentenced Wynn to 12 months and 1 day in prison and ordered him to pay $118,000 in restitution.

From the judgment of conviction, dated August 19, 2011, Wynn filed this appeal.

## II

For his principal argument, Wynn contends that a conviction under the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, requires that the government show that Wynn "intended to harm Oconee County," and that the government failed to prove that Wynn "contemplated or intended to harm Oconee County." He claims that there was no evidence that he intended "to induce Oconee County to part with property or undertake some action that it would not otherwise do absent his misrepresentation or omission." He argues further that the district court compounded the problem by instructing the jury that "intent to defraud" requires a "specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else." Focusing on the court's use of the word "usually" in connection with "personal financial gain," he maintains that the district court allowed his conviction without requiring proof of intent to harm. Without any proof of intent to harm, Wynn reasons, all the government was required to show was some form of deception, and he asserts that clearly the government must prove more than "mere deception."

As we show, however, the district court properly instructed the jury on the elements of the mail fraud and wire fraud offenses, and the evidence that the government presented at trial was sufficient for the jury to convict.

Sections 1341 and 1343 of Title 18 punish anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," uses the mails or electronic wires "for the purpose of executing such scheme or artifice." 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). Thus, to convict a person of mail fraud or wire fraud, the government must show that the defendant (1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme. *See United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012). And the element "to defraud" has "the common understanding of wronging one in his property rights by dishonest methods or schemes and usually signify[ing] the deprivation of something of value by trick, deceit, chicane, or overreaching." *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (internal quotation marks omitted); *see also United States v. Treadwell*, 593 F.3d 990, 996 (9th Cir. 2010) ("The common understanding of the verb 'to deprive' is to take away something, such as property, from another"). To establish a scheme to defraud, "the government must prove that the defendant[ ] acted with the *specific intent to defraud*." *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) (emphasis added).

Thus, the mail fraud and wire fraud statutes have as an element the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method, which indeed would cause him harm. In this way, Wynn is correct to assume that to convict a person of defrauding another, more must be shown than simply an intent to lie to the victim or to make a false statement to him. *See United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("[M]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution" (internal quotation marks and alteration omitted)). To be convicted of mail fraud or wire fraud, a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the

victim of something of value. This specific intent to defraud is the only mens rea requirement for mail fraud and wire fraud.

In this case the district court followed these principles in instructing the jury. The court stated:

> The defendant can only be found guilty of this crime only if the following facts are proved beyond a reasonable doubt. First, the defendant knowingly devised or intended to devise a scheme to defraud or to obtain money or property by use of false or fraudulent pretenses, representations or promises. Second, the false or fraudulent pretenses, representations or promises were about a material fact. Three, the defendant acted with the intent to defraud. And fourth, in advancing, furthering, or carrying out the scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises, the defendant used [the mails or electronic communications].

> Now, the scheme to defraud includes any plans or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations or promises.

> * * *

> The intent to defraud is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

Thus, the district court did not allow the jury to find that Wynn would be guilty of mail fraud and wire fraud by finding merely that he lied or made a false statement; rather, the court required that the government prove that the scheme to defraud "intended to deceive or cheat someone out of money or prop-

erty." In telling the jury that the specific intent to defraud or cheat was "usually for personal financial gain or to cause financial loss to someone else," the court was merely explaining what *motivates* an intent to defraud in the usual case. But this explanation did not withdraw the instruction to the jury that the scheme to defraud *must* "include a plan or course of action intended to deceive or cheat someone out of money or property," which obviously includes an intent to harm in some sense. *See Treadwell*, 593 F.3d at 997 ("The intent to induce one's victim to give up his or her property on the basis of an intentional misrepresentation causes 'harm' by depriving the victim of the opportunity to weigh the true benefits and risks of the transaction, regardless of whether or not the victim will suffer the permanent loss of money or property").

Deliberating under these instructions, the jury reasonably found Wynn guilty based on the evidence presented at trial, which at this stage we take in the light most favorable to the government. *See United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007). Wynn admits that the evidence shows that he intentionally cut a DHEC permit from a properly permitted set of plans and fraudulently pasted it onto the non-permitted plans he sent to Oconee Airport (by mail) and to the DHEC (by electronic means). The explanation for such conduct offered by the government at trial was that Wynn intended to deceive Oconee County and the DHEC into believing that the plans had been properly permitted so that the DHEC would not interfere with construction and the County would continue construction and continue to pay Talbert & Bright's fees. The evidence established that Wynn knew that the plans for the runway project required a permit; that Oconee County was expecting his company to procure the proper permits for the plans; that Oconee County was paying Talbert & Bright to perform these services; and that his fraudulent seal would likely mislead Oconee County and the DHEC into believing that his plans had been legitimately permitted. Thus, the evidence established that Wynn had a specific intent to deprive Oconee Airport of money and to alter the decisionmaking by

Oconee County and the DHEC about the project by depriving them of the knowledge that Wynn had failed to procure a proper permit for the project.

We conclude that this provided ample evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that Wynn intended to devise a scheme to defraud the County and the DHEC, in violation of the mail fraud and wire fraud statutes.

## III

Wynn next contends that the evidence was insufficient to support a finding that his misrepresentation of the plans was a *material* misrepresentation because "Oconee County had already begun construction pursuant to a set of subsequently developed plans [for the 60-acre project]." Thus, according to Wynn, "the outdated and superseded plans [for the 48-acre project] that included the false seal . . . could not have been a material falsehood." Moreover, Wynn asserts that even if Oconee County did rely on his fraudulently permitted plans [for the 48-acre project], it did so unreasonably. In short, Wynn argues that his misrepresentation was *not material* and that it was *not reasonably relied on*.

The test for materiality of a false statement is whether the statement "has a natural tendency to influence, or is capable of influencing" its target. *Neder v. United States*, 527 U.S. 1, 16 (1999) (internal quotation marks and alteration omitted); *see also United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998) (restating the test as whether the misrepresentation "*might* have influenced [the target's] decision" (emphasis added)). Of course this "test is unquestionably satisfied when . . . the defendant's falsehoods *did in fact* influence [their target]," because "[a]ctually influencing [the target] is proof positive that a statement is capable of influencing [the target] to act." *United States v. Garcia-Ochoa*, 607 F.3d 371, 378 (4th Cir. 2010).

The evidence in this case overwhelmingly supports the conclusion that Oconee County *actually relied* on Wynn's misrepresentation. The County authorized construction of the project on the belief that Talbert & Bright had obtained or was obtaining the necessary permit, a belief that was confirmed when, in November 2009, it received the permitted plans from Wynn. It is true that the contractor had been working with plans that had been provided to it earlier, as approved by the County in April 2009 and as had been later amended by change order to add the 12 acres. But its authorization to work was based on the County's belief that proper permitting was not an issue. Airport Director Short testified that upon receiving the permitted plans in November, he conducted only a cursory review of them and did not realize the discrepancy of the two omitted additional pages in the 62-page document —the only difference between the original 48-acre plans and the revised 60-acre plans. He explained in his testimony that he did not feel a need to review the plans because he trusted that Talbert & Bright had performed its job competently and that its job included obtaining the permits for the project. We readily conclude that these facts showing the County's actual reliance on Wynn's misrepresentations of necessity allowed the jury reasonably to conclude that Wynn's misrepresentations had a "natural tendency to influence" or were "capable of influencing" Oconee County into believing that it had a set of validly permitted plans with which to proceed with construction of its runway extension project, thus satisfying the materiality test.

Wynn's argument that the County's reliance on the representations was unreasonable is trumped by the established test for materiality, which inquires only whether the representations had a natural tendency to influence or was capable of influencing its target. *Neder*, 527 U.S. at 16. The Supreme Court has been clear that "the common law requirement of 'justifiable reliance' . . . plainly has no place in the federal fraud statutes." *Id.* at 24-25.

IV

Wynn next contends, with respect to his wire fraud conviction, that the government "failed to prove that [he] used interstate wires *to deceive Oconee County*, the alleged victim," because he "emailed the 48-acre plan *to DHEC*, not Oconee County." He concludes that the government's evidence as to wire fraud thus "lacks convergence."

Because Wynn never advanced this argument in the district court, we review it for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Claridy*, 601 F.3d 276, 285 (4th Cir. 2010). Under the plain error standard, we must find, among other things, that there was error and that the error was plain. In the circumstances here, we can find neither. Our court has never addressed the convergence argument, and the other circuits are split on the issue. *Compare, e.g.*, *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010) ("[T]he deception of regulatory agencies for the purpose of allowing victimization of third parties is a cognizable mail fraud offense"), *with United States v. Evans*, 844 F.2d 36, 39 (2d Cir. 1988) ("If a scheme to defraud must involve the deceptive obtaining of property, the conclusion seems logical that the deceived party must lose some money or property"). It is therefore apparent that the issue has not been resolved *plainly*.

Moreover, on the facts of this case we do not even find error. There was ample evidence to support the conclusion that Wynn's transmission of the fraudulently permitted plans by wire to the DHEC was an attempt to lull state regulators into ignoring his fraud and to forestall the agency's discovery of it by Oconee County. This type of deception of the State easily fits within the scope of *a scheme* to defraud the County. *See United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963) ("[C]ommunications having a propensity to lull and forestall action on the part of the victims may form an integral part of the overall scheme to defraud"). By wiring the fraudulently permitted plans to the DHEC, Wynn intended to

accomplish, and did accomplish, his scheme to have the project continue, the same objective furthered by his mailing of the fraudulently permitted plans to Oconee County. Thus, both the mailing and the wiring of the plans were undertaken with the ultimate goal of continuing to deceive Oconee County and to have the project go forward with the resulting payment of fees to Talbert & Bright.

V

Finally, Wynn contends that the district court improperly calculated the loss amount used to determine his sentence, both with respect to calculating the appropriate Sentencing Guidelines range and the amount of loss for restitution.

The district court found that the amount of loss resulting from Wynn's scheme was $118,000, the amount of invoices paid by Oconee County to Talbert & Bright during the period when the project continued as a result of the fraud—between November 2009 (the month in which Wynn sent the fraudulent permit to Oconee County) and February 2010 (the month in which Wynn's fraud was discovered). We review the court's finding for clear error. *See United States v. Mehta*, 594 F.3d 277, 281 (4th Cir. 2010).

Wynn argues that the amount is "grossly" exaggerated because "only $11,640 of the invoices [during that period] relate to 'Plan Revisions, Coordination, and Permit Modifications'—the subject of the fraud—whereas the remainder can be attributed to other tasks undertaken by Talbert & Bright, including construction administration and grant management."

The district court agreed with the government's position that the full amount Oconee County paid on the contract from the beginning of the fraud until its discovery should be restored because it was Wynn's fraud that led Oconee County to continue paying Talbert & Bright and to proceed with all

aspects of the work. Moreover, the amount may have been conservative because, by depriving Oconee County of a valid permit—and lying about it—Wynn effectively deprived the County of many further benefits from the related construction and grant work. Moreover, once Oconee County discovered the invalidity of the permit, it was forced to discontinue construction of its project for months.

We conclude that the district court did not clearly err in its factual finding. The loss caused to Oconee County by Wynn's fraudulent conduct cannot be restricted to money paid specifically for permitting services and isolated from the other aspects of the work performed by Talbert & Bright under the contract. In claiming total expenditures made in reliance on the fraudulent approval, it is notable that the government did *not* attempt to claim other losses to Wynn arising out of the six-month shutdown of the construction project, the ensuing litigation, or the losses arising from the later permitting work, all of which arguably resulted from the discovery of Wynn's fraud. The district court "need only make a reasonable estimate of the loss," U.S.S.G. § 2B1.1 cmt. n.3(C), and its award of the full amount invoiced by Talbert & Bright and paid by Oconee County during the period of Wynn's fraud, *i.e.*, between November 2009 and February 2010, was a reasonable estimate of the loss attributable to the fraud.

\* \* \*

The judgment of the district court is accordingly

*AFFIRMED*.