**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-5129**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

DANNY MICHAEL HANCOCK,

              Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:10-cr-00043-NCT-1)

Submitted:  January 15, 2013        Decided:  February 27, 2013

Before TRAXLER, Chief Judge, and GREGORY and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Chief Judge Traxler and Judge Shedd joined.

A. Wayne Harrison, Sr., LAW OFFICES OF WAYNE HARRISON, Greensboro, North Carolina, for Appellant.  Ripley Rand, United States Attorney, Frank J. Chut, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Danny Michael Hancock was tried and convicted of federal mail fraud and aggravated identity theft for perpetrating a fraudulent motor vehicle sales scheme. A judgment of forfeiture was also entered against him. Hancock now challenges his mail fraud convictions, arguing that his tangential use of the mail cannot substantiate his convictions. In addition, he argues the resultant identity theft convictions must also be reversed and the judgment of forfeiture entered against him vacated. We find Hancock's arguments unpersuasive and therefore affirm his convictions and the judgment of forfeiture.

I.

Since 1998, Hancock operated a License Plate Agency ("LPA"), in Thomasville, North Carolina. LPAs privately contract with the North Carolina Department of Motor Vehicles ("DMV") to process title work and renewals. Besides operating the LPA, evidence shows that between 2004 and 2007, Hancock operated a business called Atlantic Coast Equipment Sales and Leasing ("ACE"), which sold motor vehicles and trailers. There were two problems with Hancock operating ACE: (1) ACE was not a licensed motor vehicle dealer, a class one misdemeanor under North Carolina law; and (2) under LPA Operating Procedures, an

2

LPA operator is expressly prohibited from operating a motor vehicle dealership.[1]

Using the LPA and ACE, Hancock devised a scheme to conceal the sale of unlicensed motor vehicles. Hancock would create falsified vehicle title applications, sale documents, and notary verifications in order to "skip title." To successfully operate the scheme, Hancock used the names of persons who bought vehicles from him and the names of local car dealers, and made it seem as though there was a direct sales transaction between the two parties. By "skipping title," Hancock never showed up as a registered owner of the vehicles in the DMV records and therefore never had to pay the highway use taxes and title fees due under North Carolina law.[2] To complete the fraud, Hancock mailed the falsified title applications to the DMV for the sale to be recorded by the state and the vehicles to be duly registered. Such registration was required by North Carolina law.

---

[1] North Carolina law defines a "motor vehicle dealer" as a person who sells or displays more than four vehicles within a twelve-month period. N.C. Gen. Stat. Ann. § 20-286(11)(a)(1).

[2] This scheme required Hancock to possess an "open title," which is illegal under North Carolina law. See N.C. Gen. Stat. Ann §§ 20-72-20-75. An open title is a title where the seller's name is signed, but the buyer's name is left blank.

On May 27, 2007, North Carolina DMV inspectors and High Point Police Detectives executed a search warrant on ACE's sale lot. During the search, law enforcement found evidence of the scheme, including title applications, titles, bills of sale, and a ledger. The dates on the documents found during the search revealed that the business was in operation while Hancock operated the LPA, violating North Carolina policy.

DMV inspectors obtained and reviewed the title histories for the vehicles listed in ACE's ledger and other files. Review of the records revealed that neither Hancock nor ACE appeared as registered owners of the vehicles sold in the official DMV records. Specifically, the investigation showed that Hancock skipped title for a 1985 Ford truck, a 2000 Chevrolet Blazer, a 1997 Chevrolet truck, and a 1984 truck and trailer. Thus, the investigation showed that Hancock avoided tax and title fee liability for the vehicles and that he operated an unlicensed motor vehicle dealership.

Based on this information, on January 26, 2010, a federal grand jury returned a multiple-count indictment against Hancock alleging numerous violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1028A (aggravated identity theft). Hancock pled not guilty to the indictment. A jury trial commenced on October 19, 2010. On October 25, 2010, at the close of trial, the jury found Hancock guilty of four counts of

4

mail fraud and three counts of aggravated identity theft. On October 6, 2011, Hancock was sentenced to 45 months' imprisonment followed by 3 years of supervised release; a special assessment of $700 was also assessed. A final order of forfeiture was entered against Hancock in the amount of $607,517.32.

Hancock timely appealed.

II.

Hancock now argues that there was insufficient evidence for the jury to find him guilty of mail fraud. When we review a sufficiency of the evidence claim, we ask whether, construing the evidence in the light most favorable to the government, any reasonable trier of fact could have found Hancock guilty beyond a reasonable doubt of the charges of which he was convicted. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

To be found guilty of mail fraud under 18 U.S.C. § 1341, the government must prove that the defendant "(1) devised or intended to devise a scheme to defraud and (2) used the mail . . . in furtherance of the scheme." United States v. Wynn, 684 F.3d 473, 477 (4th Cir. 2012) (citing United States v. Jefferson, 674 F.3d 332, 366 (4th Cir. 2012)). Hancock does not argue that the government failed to establish the first element;

5

he readily admits he created a fraudulent scheme. Instead, Hancock's appeal rests on his contention that the government cannot prove the second element -- raising a number of arguments as to why there was insufficient evidence to satisfy the use of mails element. We address the arguments seriatim.

A.

In Parr v. United States, the Supreme Court espoused that "'[t]he federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud . . . ." 363 U.S. 370, 389-90 (1960) (quoting Kann v. United States, 323 U.S. 88, 95 (1944)). Hancock argues the scheme in question ended at the sale of the vehicles, and the mailing of the title application was a mere formality required by state law, thus failing to satisfy the use of mails element required for a federal mail fraud conviction.

Although the language of Parr arguably supports Hancock's position, the Court in Schmuck v. United States, 489 U.S. 705 (1989), affirmed a mail fraud conviction for a fraudulent scheme directly analogous to the one before us. In Schmuck, the defendant purchased used cars, rolled back the odometers, and sold them to dealers at prices artificially inflated by the low-mileage readings. Id. at 707. The dealers

6

consummated the transactions by mailing title-application forms to the state DMV on behalf of the buyers.  Id.  The defendant tried to argue, relying on Kann and Parr, that "mail fraud can be predicated only on a mailing that affirmatively assists the perpetrator in carrying out his fraudulent scheme."  Id. at 711. The Court rejected this argument, finding that "although the registration-form mailings may not have contributed directly to the duping of either the retail dealers or the customers, they were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme."  Id. at 712. All that matters, therefore, is that the mailings are "incidental to an essential part of the scheme."  Id. at 712 (quoting Pereira v. United States, 347 U.S. 1, 8 (1954)).

The reasoning of Schmuck clearly extends to the fraudulent scheme devised by Hancock.  The purpose of Hancock's scheme was to sell vehicles without paying the requisite taxes and fees to the DMV.  These taxes and fees were assessed upon receipt of the title application.  Thus, the falsified and factually incorrect title applications that were sent via mail were an essential part of the scheme in question — "they were necessary to the passage of title."  See Schmuck, 489 U.S. at 712; United States v. Locklear, 829 F.2d 1314, 1318 (4th Cir. 1987) (per curiam) (finding the use of mails element is satisfied when the defendant knows "the use of the mails will

7

follow in the ordinary course of business"). It is clear that mailing the title documents was essential to Hancock's scheme.

## B.

Hancock also argues the use of mails element was not proven because the mailings were required by North Carolina law. This argument is derived from Parr, in which the Court found the "use of the mails" element was not met in part because the mailings were "legally compelled." 363 U.S. at 391 (finding that a tax assessment sent by mail as required by law could not support a federal mail fraud conviction). The idea that "legally compelled" mailings cannot be used to prove federal mail fraud was clarified in Schmuck. In Schmuck, the Court held that mailings are not "legally compelled" when they are made in compliance with a state registration statute, as these mailings would not have been made "regardless of the defendants' fraudulent scheme." 489 U.S. at 713 n.7. The Court found that mailings compelled by fraud, such that it is the fraudulent act that triggers a state mailing requirement, can be used to prove the "use of mails" element of the federal mail fraud statute. Id. Under Schmuck, therefore, it does not matter if a mailing is "legally compelled" if the legal requirement is brought about by the defendant's fraud, necessarily foreclosing Hancock's argument.

8

C.

Hancock raises one last claim as to why his mail fraud convictions must be reversed, arguing there was no victim in this case, and that without a victim, there is no fraud.

This argument is fatuous. Hancock is correct in that mail fraud requires the specific intent to deprive someone of something of value. See Wynn, 684 F.3d at 478. And while he may not have deprived the people to whom he sold vehicles anything of value, Hancock did intentionally deprive North Carolina of taxes and title fees due under law – the state of North Carolina is the victim of the fraud here.

D.

Hancock finally proclaims that "[o]f course he could have been prosecuted in state court for violations of the several state statues referenced in the indictment herein; but that is a different story than an attempt to cast a federal net over his actions." Appellant's Br. 16. Contrary to Hancock's assertion, the federal mail fraud statute does cast a net over his actions because as noted by the Supreme Court, "[t]he fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute, for Congress 'may forbid any (mailings) in furtherance of a scheme that it regards as contrary to public policy whether it can

9

forbid the scheme or not.'" Parr, 363 U.S. at 389 (quoting Badders v. United States, 240 U.S. 391, 393 (1916)) (alteration in the original). The federal mail fraud statute is comprehensive in scope. That Hancock violated a number of state laws does not obviate his violations of the federal mail fraud statute.

A quote from Schmuck sums up our response to Hancock's appeal well: "Under these circumstances we believe a rational jury could have found that title-registration mailings were part of the execution of the fraudulent scheme, a scheme which did not reach fruition until [ACE and Hancock] resold the cars and effected transfer of title." 489 U.S. at 712. No matter how Hancock frames the way in which he used the mail, Supreme Court precedent clearly supports his convictions. Correspondingly, Hancock's mail fraud convictions are affirmed.

III.

Hancock next challenges his aggravated identity theft convictions. He does not attack the sufficiency of the evidence presented to the jury on the identity theft charges. He simply argues that since his mail fraud convictions must be reversed, his aggravated identity theft convictions should also be set aside.

10

Mail fraud is a predicate offense to being found guilty of aggravated identity theft. 18 U.S.C. § 1028A(c)(7); see also United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). Because the mail fraud convictions are supported by substantial evidence, and because Hancock does not independently attack the sufficiency of the identity theft evidence put forth to the jury, the aggravated identity theft convictions must stand.

IV.

Hancock finally argues that the judgment of forfeiture must be vacated due to the fact that the federal offenses of which he was convicted should be reversed. A judgment of forfeiture requires a requisite underlying conviction. 18 U.S.C. § 982(a)(3)(E); see also United States v. Cherry, 330 F.3d 658, 670 (4th Cir. 2003). As explained above, we affirm Hancock's convictions and therefore uphold the judgment of forfeiture entered against him.

V.

For the reasons detailed in this opinion, Hancock's convictions and the judgment of forfeiture entered against him are affirmed.

AFFIRMED

11