**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4536**

_____

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

MICHAEL F. HARRIS,

                  Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (3:12-cr-00170-HEH-1)

_____

Submitted:  April 18, 2014         Decided:  June 27, 2014

_____

Before SHEDD, KEENAN, and THACKER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

David B. Hargett, HARGETT LAW, PLC, Glen Allen, Virginia, for Appellant.  Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Michael R. Gill, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Harris ("Appellant") was charged in an eight-count indictment with securities fraud, wire fraud, and mail fraud arising out of a fraudulent investment scheme. After a jury trial, Appellant was convicted of three counts of wire fraud and one count of mail fraud and was sentenced to 108 months' imprisonment. On appeal, Appellant challenges the sufficiency of the evidence at trial as well as the district court's calculation of his Sentencing Guidelines range. We have reviewed the record and find no reversible error. Accordingly, we affirm.

I.

On October 15, 2012, a grand jury in the Eastern District of Virginia returned an eight-count indictment charging Appellant with several crimes in connection with an investment fraud scheme. According to the indictment, Appellant solicited investor funds by representing to investors that the funds would be used to conduct human trials and develop patents on a treatment for HIV/AIDS. Instead of using the money for those purposes, the indictment alleged that Appellant misappropriated/converted a vast majority of the money for his personal use and that he concealed his fraud from investors. The specific charges against Appellant were: securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x (Counts 1-4); wire

fraud, in violation of 18 U.S.C. § 1343 (Counts 5-7); and mail fraud, in violation of 18 U.S.C § 1341 (Count 8).

A.

Appellant pled not guilty to all charges. Before trial, Appellant filed a motion to dismiss Counts 1 and 2 on statute of limitations grounds, which the district court granted. Appellant proceeded to a jury trial on the remaining Counts.[1] The following facts are based on the testimony at trial, which took place between February 25, 2013 and March 4, 2013.

Appellant was the president, CEO, and principal shareholder of M.F. Harris Research ("MFH"), a company that was allegedly involved in researching a cure for HIV/AIDS. According to the evidence presented at trial, Appellant claimed that MFH was developing a treatment for HIV/AIDS that involved using a hyperbaric chamber to introduce nitrogen into a patient's cells, which would combat the HIV/AIDS virus.

Between 2005 and 2011, Appellant solicited investments by selling shares of MFH stock for $1.00 a share. In soliciting these investments, Appellant made a number of presentations in which he told potential investors that their money would be used

---

[1] As explained below, Counts 3 and 4 were dismissed post-trial for lack of venue. Therefore, this section focuses only on the facts relating to Counts 5 through 8.

by MFH to obtain the necessary patents, begin human trials of the hyperbaric chamber treatment, and continue research. From October 2005 through July 2011, Appellant received approximately $900,000.00 in investments. Of that amount, no money was used for HIV/AIDS research, and only $54,787.24 was used to pay for patent fees. The Government presented evidence that the remaining investor funds were spent by Appellant on personal expenses, including mortgage payments, vehicles, a gun collection, farm and horse expenses,[2] child support, and other personal purchases.

### 1.

### Count Five

The trial evidence relating to the wire fraud charge in Count 5 was based on the circumstances surrounding a single investment of $200,000.00 by Dr. T.M.[3] In 2006, Dr. T.M. discovered that he and his former partner, M.B., were HIV positive. At the end of August 2006, Dr. T.M. was joined by M.B. and S.B., a friend who was also HIV positive, on a trip

---

[2] Appellant was involved in competitive steeplechase horse racing, and the evidence at trial revealed that he spent investor funds on horse boarding and other farm-related expenses. In addition, Appellant met several MFH investors at horse shows.

[3] To protect the confidentiality of several victims in this case, we refer to them by their initials.

from California to Virginia to meet with Appellant. Over several days, the three men discussed with Appellant his research of HIV treatment using hyperbaric chambers. At trial, witnesses testified that Appellant represented to Dr. T.M. that if he invested in MFH, his investment dollars would go toward HIV research and that Dr. T.M., M.B., and S.B. would be the first patients to receive the treatment.

Dr. T.M. agreed to invest $200,000.00 in MFH. The Government presented evidence that between October 3, 2006 and February 7, 2007, almost all of Dr. T.M.'s investment was used by Appellant for his personal expenses, including $107,974.74 to purchase and maintain a home. Only $6,000.00 was used to pay patent expenses and none of the money went to HIV research.

On October 31, 2006, Dr. T.M. died of causes unrelated to HIV. Dr. T.M.'s brother, John M., served as executor of Dr. T.M.'s estate and tried to obtain information from Appellant about his brother's $200,000.00 investment. John M. sent letters to Appellant requesting information about MFH's future plans and asking for Dr. T.M.'s stock certificates. After these letters went unanswered, John M. attempted to contact other MFH investors and made complaints to several state and federal agencies.

On March 12, 2008, Appellant sent John M. an email in which Appellant alleged that John M. was falsely impersonating

an investor of MFH and that if he continued to do so, he would "be contacted by authorities with a restraining order." J.A. 1001.[4] John M. responded, explaining that he was acting on Dr. T.M.'s behalf and that he needed the stock certificates for the $200,000.00 investment. John M. also wanted to know how the investment money was being spent. Appellant replied to this email, telling John M. that MFH shares are non-transferable. Appellant still did not provide the requested financial information to John H.

2.

Count Six

With respect to the wire fraud charge in Count 6, the Government introduced evidence that in 2008, Appellant went to the home of David Evans to present Mr. Evans and his wife with an opportunity to invest in MFH. Mr. Evans testified that Appellant told him and his wife that their investment would be used to obtain patent approval and to finish clinical trials of the HIV/AIDS treatment that MFH was developing. According to Mr. Evans, there was no discussion during Appellant's presentation regarding Appellant using investment money to pay his own salary or to pay for any personal expenses. At trial,

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Mr. Evans testified, "[i]f I thought he was going to use my money for salary, I wouldn't have given him any of my money." J.A. 53.

After the presentation, Mr. Evans decided he would invest $5,000.00, and on August 4, 2008, Appellant sent Mr. Evans an email welcoming him to the project and providing him with wire transfer information. As Appellant's counsel pointed out at trial, the August 4, 2008 email also attached several documents, including a request for government funding that referenced an annual salary of $100,000.00, plus another $22,400.00 in annual benefits, for the CEO of MFH.

On August, 15, 2008, Mr. Evans followed Appellant's instructions and wired $5,000.00 to the MFH bank account. Just before Mr. Evans's investment arrived in MFH's bank account, the account's balance was $40.87. By August 21, 2008, the account was overdrawn. The Government's evidence at trial demonstrated that Appellant used Mr. Evans's investment to pay for a number of personal expenses.

3.

Count Seven

Count 7 was a wire fraud charge based on an investment from Diane Desch in 2011. Ms. Desch testified that she went to Appellant's home in early 2011 and Appellant presented her with information regarding MFH and its research. With respect to

7

MFH's progress in developing a cure for HIV/AIDS, Appellant told Ms. Desch that "he was very close. He finished Stage I. He was in Stage II, and all he had to do was go to Stage III." J.A. 97. Then, on June 13, 2011, Appellant called Ms. Desch and told her that he needed $2,500.00 by noon to pay patent fees in Europe or MFH was "dead in the water." Id. at 100. Later that day, Ms. Desch went to the bank and sent $2,500.00 to Appellant via wire transfer. Financial analysis presented at trial showed that only $2,100.00 of this money was used to pay patent expenses and the remainder was used by Appellant for personal expenses.

Shortly thereafter, Appellant asked Ms. Desch to invest additional money into MFH, telling her that she could receive a block of shares at $5,000.00 per block. Appellant told Ms. Desch that she could purchase shares of MFH for $1.00 per share but that those shares would eventually be worth $22.00 or $23.00 per share. On June 28, 2011, Ms. Desch wire transferred $7,500.00 to MFH to secure two full bocks of shares. This wire transfer formed the basis for the wire fraud charge in Count 7. Appellant never told Ms. Desch that any of her investment would be used for Appellant's personal expenses. Ms. Desch testified that she understood her investment would be used to research the cure for AIDS and she would not have invested in MFH had she known her money would be used for Appellant's

8

personal expenses. Financial analysis presented at trial demonstrated that Appellant spent Ms. Desch's entire $7,500.00 investment on personal expenses.

4.

Count Eight

Count 8, the mail fraud charge, was based on a November 2010 mailing sent by Appellant to MFH investors notifying them of a November 20, 2010 shareholder meeting in McLean, Virginia. Nicole Gentry, an investor who had invested $5,000.00 in MFH in 2005, testified at trial that she received the notification of the shareholder meeting in the United States mail. Several investors attended the meeting, including Ms. Gentry, Mr. Evans, and Rusty Carrier. Mr. Carrier made an audio-recording of the meeting, which was played for the jury.

At the meeting, Appellant made a number of representations about the financial and business status of MFH, including the following: patent expenses were costing MFH approximately $9,000.00 per quarter; MFH was the owner of the patent; Appellant was actively working on financial reports to show investors how MFH dollars were being spent; and Appellant had won money through steeplechase horse racing and used the winnings to fund MFH. The Government presented evidence at trial which contradicted Appellant's representations to the investors at the shareholder meeting. In particular, the

Government presented the following evidence: Appellant spent only $6,972.42 for patent fees in 2010 and patent expenditures for the entire period between 2005 and 2011 totaled only $54,787.24; Appellant -- not MFH -- owned the patent and Appellant transferred ownership of the patent to MFH just weeks before trial; Appellant had never provided investors with any of the promised financial information concerning MFH; and an analysis of Appellant's horse income and expenses revealed a net loss rather than a gain. Appellant also told investors at the shareholder meeting that MFH needed more money and that Appellant was concerned that a rival company was developing similar science as MFH.

B.

At the close of the Government's case-in-chief, Appellant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, challenging the sufficiency of the evidence. The district court denied Appellant's motion. Appellant renewed his Rule 29 motion for judgment of acquittal at the conclusion of the trial evidence, which the district court also denied.

The case was presented to the jury, and on March 4, 2013, the jury found Appellant guilty of securities fraud (Counts 3-4), wire fraud (Counts 5-7), and mail fraud (Count 8). With respect to Counts 3 and 4, Appellant filed a post-trial

10

motion for judgment of acquittal, arguing that the Government failed to establish venue. The district court granted the motion.

## C.

Appellant proceeded to sentencing on the remaining counts of conviction (Counts 5-8) on July 10, 2013. At the sentencing hearing, the district court calculated Appellant's total offense level at 29 with a criminal history category of I, which yielded an advisory range under the United States Sentencing Guidelines ("U.S.S.G.") of 87 to 108 months' imprisonment. Included in the total offense level calculation was a two-level increase because a victim of the offense was a vulnerable victim, see U.S.S.G. § 3A1.1, and a two-level increase for Appellant's abuse of a position of trust, see U.S.S.G. § 3B1.3. The district court overruled Appellant's objections to each of these offense-level enhancements. Thereafter, the district court imposed a within-Guidelines sentence of 108 months' imprisonment on Counts 5 through 8, all to be served concurrently. The district court also imposed a three-year period of supervised release for each Count, also to run concurrently.

On July 12, 2013, Appellant timely appealed his convictions and sentence. Appellant challenges his convictions on sufficiency of evidence grounds and, in the alternative,

11

challenges the district court's Sentencing Guidelines calculation, arguing that he should not have been subject to the vulnerable victim or abuse of a position of trust enhancements. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

### A.

Appellant contends that the evidence was insufficient to support his convictions for wire fraud and mail fraud. It is well settled that "[a] defendant challenging the sufficiency of the evidence faces a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007). We review such challenges de novo. United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007). In so doing, "we view the evidence on appeal in the light most favorable to the government in determining whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Cone, 714 F.3d 197, 212 (4th Cir. 2013) (citing United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005)). We do not weigh the evidence or review the credibility of the trial witnesses, and we assume that the jury resolved all discrepancies in testimony in favor of the government. See id. "We will uphold the jury's verdict if substantial evidence supports it and will reverse only in those rare cases of clear failure by the

12

prosecution." Id. As we have explained, "substantial evidence" is that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks omitted).

### B.

Appellant was convicted of wire fraud and mail fraud. "Sections 1341 and 1343 of Title 18 punish anyone who, 'having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' uses the mails or electronic wires 'for the purpose of executing such scheme or artifice.'" United States v. Wynn, 684 F.3d 473, 477 (4th Cir. 2012) (quoting 18 U.S.C. §§ 1341, 1343). Therefore, the offenses of mail fraud and wire fraud require the Government to prove beyond a reasonable doubt that the defendant: "(1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme." Id. Proof of a "scheme to defraud" requires proof of "the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method, which indeed would cause him harm." Id. at 478.

13

When viewed in the light most favorable to the Government, we are satisfied that substantial evidence was presented at trial for a rational jury to conclude beyond a reasonable doubt that Appellant committed the offenses of wire fraud and mail fraud.

1.

We begin with the Count 5 wire fraud conviction. Appellant argues there was insufficient evidence to support this conviction because the March 12, 2008 email from Appellant to John M. did not communicate any false information. As Appellant notes, the email did not provide John M. with any of the requested financial information and simply stated that shares of MFH were non-transferable, which was consistent with the shareholder subscription agreement that Dr. T.M. signed. Therefore, according to Appellant, this email could not constitute wire fraud because the email did not communicate a falsehood.

Appellant's argument misses the point, as it seems to contend that the wire communication at issue must itself establish all of the essential elements of wire fraud. However, 18 U.S.C. § 1343 requires only that the wire communication be used in furtherance of the scheme to defraud. See Wynn, 684 F.3d at 477. Thus, the existence of the scheme to

14

defraud, as well as Appellant's specific intent to defraud, can be established through other evidence.

Throughout the trial, the Government presented overwhelming evidence of Appellant intentionally depriving MFH investors of investment funds through misrepresentations and deceit. This evidence included Appellant's solicitation of funds from Dr. T.M. through assurances that the money would be used for HIV research and that Dr. T.M., M.B., and S.B. would be the first patients to receive the treatment. Yet, despite these promises, Dr. T.M.'s $200,000.00 investment was largely spent by Appellant on personal expenses. Appellant's intent to defraud MFH investors was established well before he sent the March 12, 2008 email to John M.

The Government's theory with respect the specific wire communication referenced in Count 5 was that it was used in furtherance of Appellant's scheme to defraud because it was sent for the purpose of concealing the fraud from John M., the executor of Dr. T.M.'s estate. It is of no consequence whether the information communicated in Appellant's email to John M. was consistent with the shareholder subscription agreement that Dr. T.M. had signed. The jury was entitled to consider the email communication in the context of all the evidence and conclude that the email's purpose was to further Appellant's fraud. Accordingly, there was substantial evidence from which the jury

could conclude that Appellant was guilty beyond a reasonable doubt of wire fraud, as charged in Count 5.

2.

Turning next to Counts 6, 7, and 8, Appellant argues that there was insufficient evidence to support these convictions because the Government did not establish a specific intent to defraud. Specific intent is required to convict an individual of wire fraud or mail fraud. Wynn, 684 F.3d at 478. This means, "a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value." Id. A defendant's specific intent to defraud may be inferred from the totality of the circumstances. United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001). With this standard in mind, we turn to the evidence presented to support the specific intent to defraud in Counts 6, 7, and 8.

a.

Counts 6 and 7 can be analyzed together because Appellant raises virtually the same argument for each -- namely, that any evidence of misrepresentations or an intent to defraud was negated by documentation received by investors that referenced an annual salary of $100,000.00 for the CEO of MFH. According to Appellant, Mr. Evans, the investor referenced in Count 6, "knew or should have known . . . that most if not all of the investment would go toward [Appellant's] salary, negating

16

any intent to defraud." See Appellant's Br. at 19. Similarly, Appellant notes that Ms. Desch, the investor referenced in Count 7, "did not specifically deny that the paperwork contained information about a salary." Id. at 20. Essentially, Appellant claims that he was entitled to draw a salary and, as a result, he did not defraud investors because they should have known that their money would be used by Appellant to pay for his personal expenses.

In contrast, the Government presented evidence that Appellant assured investors, time and again, that their investment dollars would be used for obtaining patents, conducting research, or conducting clinical trials. Both Mr. Evans and Ms. Desch testified that they would not have invested in MFH if Appellant had told them that he was going to use their investments to pay for personal expenses. Yet, within a week of receiving Mr. Evans's $5,000.00 investment, Appellant spent that money on farm and horse expenses, housing costs, and bank fees. Likewise, in less than a month after having received Ms. Desch's $7,500.00 investment, Appellant also spent those funds on personal expenses.

The jury was entitled to consider the dichotomy between Appellant's promises to Mr. Evans and Ms. Desch on the one hand, and his subsequent use of their investment funds on the other hand, to conclude that Appellant specifically intended

17

to "misrepresent with the design of depriving [Mr. Evans and Ms. Desch] of something of value." See Wynn, 684 F.3d at 478. Moreover, the jury was entitled to reject -- and apparently did reject -- Appellant's contention that the documents referencing a salary somehow negated his specific intent to defraud Mr. Evans and Ms. Desch. Accordingly, there was substantial evidence from which the jury could conclude that Appellant was guilty beyond a reasonable doubt of wire fraud, as charged in Counts 6 and 7.

b.

Finally, Appellant challenges the sufficiency of the evidence with respect to his mail fraud conviction in Count 8. Appellant argues that the Government failed to prove that the November 2010 mailing sent by Appellant to MFH investors notifying them of a November 20, 2010 shareholder meeting was sent with the intent to defraud the investors. We disagree.

The evidence at trial demonstrated that Ms. Gentry, an MFH investor, received the notice of the shareholder meeting in the United States mail and subsequently attended the meeting. At the meeting, Appellant made a number of representations about the financial status of MFH and about how investment funds were being used. The Government presented evidence at trial that contradicted these representations. The jury was thus entitled to consider the Government's evidence and conclude that

18

Appellant's representations at the shareholder meeting were false. Further, the jury was entitled to conclude that Appellant held the shareholder meeting, and sent the mailing that formed the basis for Count 8, with the intent to lull MFH investors into believing that their funds were being used for legitimate business purposes when in fact they were not. Accordingly, there was substantial evidence from which the jury could conclude that Appellant was guilty beyond a reasonable doubt of mail fraud, as charged in Count 8.

III.

A.

As an alternative to his sufficiency of evidence arguments, Appellant challenges the district court's calculation of his Sentencing Guidelines range. We review a sentence for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). In considering whether a district court properly applied the Sentencing Guidelines, "we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008) (internal quotation marks omitted). Clear error exists "only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Manigan, 592

F.3d 621, 631 (4th Cir. 2010) (internal quotation marks and alterations omitted).

B.

1.

Appellant challenges the two-level enhancement to his Sentencing Guidelines range resulting from the district court's conclusion that Dr. T.M. qualified as a "vulnerable victim." Pursuant to U.S.S.G. § 3A1.1(b)(1), a defendant's Guidelines range increases by two levels "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The commentary to the Guidelines defines a vulnerable victim as a person "(A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. For the enhancement to apply, the district court must determine that a victim was "unusually vulnerable" and "assess whether the defendant knew or should have known of such unusual vulnerability." United States v. Llamas, 599 F.3d 381, 388 (4th Cir. 2010).

Appellant contends that Dr. T.M. cannot be considered an unusually vulnerable victim simply by virtue of his HIV status. Appellant makes the following arguments in an attempt

20

to support his contention: the fraud for which Appellant was convicted involved an investment opportunity, not the actual treatment of HIV/AIDS; the science supporting the investment opportunity was not challenged by the Government at trial; Dr. T.M. was a physician at the time of his investment; Dr. T.M. was not under any disability or impairment due to his HIV status; there is no record of Dr. T.M. himself raising any concerns regarding how his investment funds were being used; and Appellant did not specifically target Dr. T.M. because of his HIV status. We are unpersuaded by these arguments.

During Appellant's sentencing hearing, the district court made detailed findings before concluding that a vulnerable victim enhancement was warranted in this case:

> The defendant argues that the investor, Dr. [T.M.], was not unusually vulnerable. He was a board certified anesthesiologist. They contend that he was not suffering from any active disability or impairment. However, the evidence was clear that he was HIV positive and seeking a cure for his condition.
>
> The testimony of his brother, who probably knew him better than any other witness in the case, indicated that his brother was very anxious for a cure, and saw the concept offered by [Appellant], Mr. Harris, as a possible avenue toward either relieving him of the symptoms or curing his disease. And it was in reliance upon that that Dr. [T.M.] invested $200,000.
>
> But also the evidence at trial and today indicated that Dr. [T.M] had clear expectations that he would be afforded an opportunity to participate in some of the research, and some of the human trials supposedly being conducted by [Appellant], and that he was anxious to do so. However, there was no research ever

21

conducted in this case, and there was no money invested whatsoever in human trials for research.

The Court finds that Dr. [T.M] was an unusually vulnerable victim, seeking treatment and cure for his medical condition, which was exploited when he invested the $200,000 to Mr. Harris based upon false representations, and therefore all the requirements for the 2-level enhancement are satisfied under 3A1.1.

J.A. 1205-06. Appellant has not offered any argument that the district court's factual findings were clearly erroneous. In this case, Dr. T.M. had been recently diagnosed with HIV and was actively seeking a cure. His $200,000.00 investment in MFH was based, at least in part, on Appellant's promise that Dr. T.M. would be among the first patients to participate in human trials. The promise of these human trials as a possible cure for Dr. T.M.'s HIV made him "particularly susceptible," see U.S.S.G. § 3A1.1 cmt. n.2, to Appellant's fraud. Accordingly, the district court did not err in applying this two-level enhancement to Appellant's Sentencing Guidelines range.

2.

Appellant also argues that the district court erred by applying a two-level enhancement for abuse of a position of trust by Appellant. Pursuant to U.S.S.G. § 3B1.3, a defendant's Guidelines range increases by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission

22

or concealment of the offense." The commentary to the Guidelines further defines "public or private trust" as follows:

> a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3 cmt. n.1.

As we have explained, "[w]hether a defendant held a position of trust must be approached from the perspective of the victim." United States v. Bollin, 264 F.3d 391, 415 (4th Cir. 2001) (internal quotation marks omitted). Moreover, "[i]n every case of fraud, the defendant will have created confidence and trust in the victim. But fraud alone does not justify the enhancement." Id. Therefore, this enhancement will apply where "the victim's trust is based on the defendant's position in the transaction" rather than "where trust is created by the defendant's personality or the victim's credulity." Id. (internal quotation marks omitted).

Here, the district court explained the basis for applying the abuse of a position of trust enhancement:

23

Enhancement under 3B1.3 applies where the defendant has broad discretion to act on behalf of the victim, and the victim believes the defendant will act in the victim's best interest. In this case, [Appellant], based upon his purported experience, training, convinced scores of investors to entrust money to him for research and development of an unproven theory for treating HIV and AIDS. He maintained complete control over the management decisions, marketing, funding, investment of funds, and bank accounts. He exercised unbridled discretion without supervision or consultation with others.

This degree of management autonomy allowed him to convert the investors' funds to his own use and benefit without accountability or investor oversight. And in addition, he concealed assets from the accountant and others, and did not reveal the purpose for which it was being used to any of the investors.

J.A. 1206-07. We agree with the district court that the enhancement was warranted here. Appellant held himself out to investors as being highly experienced in the field of HIV/AIDS research. Through this claimed experience, Appellant created an impression to investors that he would manage MFH in a way that was consistent with the best interests for the company and its investors. In entrusting Appellant with their money, the investors provided Appellant with the discretion to use their investment to advance MFH's purported goals and its supposed HIV/AIDS research. Appellant did not do so, however. Instead, he utilized his position as CEO of MFH to conceal his fraud from investors for years. Accordingly, the district court did not err in applying this two-level enhancement to Appellant's Sentencing Guidelines range.

24

IV.

For the reasons stated, we affirm Appellant's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

AFFIRMED